The court cannot acquire jurisdiction to set aside an award made in execution of an agreement between parties, and not in pursuance of a submission, under Code Civil Proc. N. Y. §§ 2366, 2374, otherwise than by action; and an order denying a motion to vacate such award will be reversed, and the motion dismissed.

Appeal from special term, New York county.

Motion by Filippo di Carlo to vacate an award made by arbitrators in pursuance of a submission, *inter partes*, of certain matters in controversy between the said Filippo di Carlo and the Williamsburgh City Fire Insurance Company. The motion was denied, and the said Filippo di Carlo appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Robert W. Todd,* for appellant. *Osborn E. Bright,* for respondent.

VAN BRUNT, P. J. We do not see how the court can acquire jurisdiction to set aside this award upon motion. It is not the result of an arbitration under the Code, and therefore the provisions of the Code were not applicable to it; and it is only where it is expressly provided by statute that the court may acquire jurisdiction by motion that it can acquire jurisdiction otherwise than by action. This arbitration not being a statutory arbitration which could possibly result in a judgment, as already suggested, the provisions of the Code as to motions in respect to the award do not apply; and, if any injustice has been suffered upon the part of the moving party, such injustice must be redressed by action. This objection, however, it does not appear was taken in the court below, and therefore we think that the order appealed from should be reversed, without costs, and the motion dismissed. All concur.

---

### In re LORILLARD et al.

(*Supreme Court, General Term, First Department.* January 13, 1891.)

1. CONSTITUTIONAL LAW—TITLE OF ACTS.

Const. N. Y. art. 3, § 17, provides that no act shall be passed providing that any existing law shall be made a part of said act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act. Laws N. Y. 1890, c. 249, § 2, providing a means whereby the city of New York might acquire title to real estate for certain purposes, declares that "such proceedings shall be had upon the said application * * * as are provided for the acquisition of real estate by chapter 490 of the Laws of 1883, and with the like effect, and all payments for the real estate so acquired, and for the charges and expenses of acquiring the same, shall be made in the manner in which such payments are to be made, and out of the moneys therefor to be raised, as provided in said last-mentioned act." *Held,* that this was not substantially in conflict with the restriction of the constitution.

2. EMINENT DOMAIN—PROCEDURE—APPLICATION BY CITY.

Under the provision of the New York city consolidation act, (Laws N. Y. 1882, c. 410, § 215,) that "the law department shall have charge and conduct of all the law business of the city and its departments, and of all law business in which the city of New York shall be interested," an application by the city to acquire title to real estate for public purposes must be made by and through the corporation counsel.

Appeal from special term, New York county.

Petition by Jacob Lorillard and others, commissioners of the Harlem bridge, for and on behalf of the mayor, etc., of the city of New York, to acquire certain lands for the purposes of said city, under chapter 249 of the Laws of 1890. The application by the petitioners for the appointment of commissioners was resisted by the city. An order was made appointing them in accordance with the prayer of the petitioners, and from that order the city appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*David J. Dean,* for appellant. *James C. Carter, A. B. Johnson,* and *H. D. Hotchkiss,* for respondents.

DANIELS, J. The first important objection taken to the legality of the proceedings which resulted in the appointment of the commissioners of appraisement, is that section 2 of chapter 249 of the Laws of 1890, so far as it has prescribed the mode of proceeding to be taken and followed in obtaining title to these lands, is a violation of and in conflict with section 17 of article 3 of the constitution of this state. This section went into effect on the 1st of January, 1875, and has since formed a part of the constitution of this state. It has declared that "no act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act." And the position taken upon it, in support of the appeal, is that the direction declaring that such proceedings shall be had upon the said application, except that the same shall be in the first judicial district, as are provided for the acquisition of real estate by chapter 490 of the Laws of 1883, and with like effect; and all payment for the real estate so acquired, and for the charges and expenses of acquiring the same, shall be made in the manner in which such payments are to be made, and out of moneys therefor to be raised, as provided in the said last-mentioned act, is in conflict with this part of the constitution. The act in this manner referred to was enacted to provide new reservoirs, dams, and a new aqueduct, to supply the city of New York with an increased amount of water; and by sections 6 to and including 22 of that act, the proceedings were prescribed which should be followed to acquire title to, and make compensation for, the lands required for the work thereby authorized; and all that was designed by this part of section 2 of the act of 1890, was that the same proceedings should be taken and followed, and the compensation in like manner provided and made, to acquire the title to the lands to be obtained by these commissioners. There are eight parcels of these lands, and the commissioners' right to acquire title to them has only been denied in case this section of the act of 1890 is in conflict with section 17 of article 3 of the constitution of the state, and if the proceedings to obtain that title have been regularly instituted. Since this section was made a part of the constitution of the state very similar acts have from time to time been enacted by the legislature; and where they have not been silently acquiesced in, this form of legislation has been maintained by the courts. The facts that this exercise of legislative power has been so generally uncontested, with its frequent repetition, are circumstances indicating the correctness of the conclusion that there is no such conflict between this form of legislation and the constitution as will require this law to be condemned; for the existence of this legislative practice, assented to as it practically has been on the part of the public for a series of years, is an indication of the general conviction that it does not infringe upon this restraint of the constitution. *People* v. *Dayton,* 55 N. Y. 367, 377, 378.

To invalidate an act of the legislature because it transcends the restraint of the constitution, a conflict between them must be clearly found to exist. "Every presumption is in favor of the validity of legislative acts, and they are to be upheld unless there is a substantial departure from the organic law."

*People* v. *Briggs*, 50 N. Y. 553, 563. And it has been added that "proper respect for a co-ordinate branch of the government requires the courts of the United States to give effect to the presumtion that congress will pass no act not within its constitutional power. This presumption should prevail unless the lack of constitutional authority to pass an act in question is clearly demonstrated." *U. S.* v. *Harris*, 106 U. S. 629, 633, 1 Sup. Ct. Rep. 601. That the legislature violated this restraint of the constitution in the enactment of so much of the act of 1890 as has now been drawn in question has certainly not been exhibited with this degree of clearness; for it has neither been provided in this part of the act that so much of the law of 1883 shall be made a part of it, nor has it been enacted that any part of that act shall be applicable to it; but all that has been provided for is that the proceedings for the acquisition of the title to the lands required for public use, by the act of 1883, and for the compensation to be made to the owners, shall be followed in acquiring the lands now proceeded against. The authority to acquire the title is wholly provided by the act of 1890; and it is only to indicate the course of proceeding to be followed to obtain that title that this reference is made to the act of 1883. In all respects the authority of the commissioners has been created and provided by the act of 1890, but it is to be carried into effect through the course of proceeding otherwise provided for by the other act. The latter act regulated the practice, while the act of 1890 created the authority to proceed under that practice; and that this form of legislation was not in violation of, or in conflict with, this part of the constitution was held in *People* v. *Banks*, 67 N. Y. 568. It is true that the similar reference contained in the act then before the court was to a general law of the state, while here it is to a local act. But that difference will justify no distinction in the application of the principle. Sustaining this reference to a general law will equally require it to be maintained when the reference is made to a local law. No reasonable distinction can be made between the cases. And that was virtually assumed in the decision of the case last mentioned. For it was then said that "there is no evil of this or any nature to be apprehended by the mere reference to other acts and statutes, for the forms of process and procedure, for giving effect to a statute otherwise perfect and complete." Id. 576. And in deciding *Wells* v. *City of Buffalo*, 14 Hun, 438, 440, the principle was sustained in its application to a direction for compliance with another local act; and the cases of *Union Ferry Co.*, 98 N. Y. 139, and *People* v. *Squire*, 107 N. Y. 593, 14 N. E. Rep. 820, have in no respect abridged this application of the principle. In the enactment of the law of 1890 the act of 1883 was clearly within the knowledge and understanding of the legislature. The reference to the latter in the former is complete, exhibiting a perfect comprehension of what was intended to be accomplished. The two acts form an intelligible system, by which the authority provided solely by the act of 1890 can be regularly carried into effect. Both upon principle, as well as authority, there can be found no conflict between the act of 1890 and this section of the constitution of the state. And the court did, accordingly, possess the authority to appoint commissioners of appraisement to obtain this title.

But while the commissioners in charge of the work of providing the Washington bridge were authorized by section 2 of chapter 249 of the Laws of 1890 to apply for the appointment of three disinterested persons as commissioners of appraisal, the manner in which that application could regularly be made was not prescribed nor defined by it. The power alone was given to them by this act, without indicating in any manner the practice to be followed in its enforcement. That, therefore, may be properly ascertained by consulting so much of chapter 410 of the Laws of 1882 as has provided for the transaction of the legal business of the city. This was business of that description, for the land to be obtained was for the city, and to be paid for by it. When obtained, the title to it was to be vested in the city, and held

in trust by it for the benefit of the public. By section 215 of this act the law department of the city has been given "the charge and conduct of all law business of the corporation and its departments, and of all law business in which the city of New York shall be interested," except as otherwise might be provided. There was no provision of law excepting this proceeding from this very general provision, and it should be so construed as to include it in fact, as it does in its terms. This was not merely a formal enactment, for the interests of the city, and the avoidance of confusion, and the prevention of abuses were intended to be secured by it. If commissioners in one case could withdraw the conduct of their legal proceedings from the law department, there would be nothing to prevent the same from being done in all other instances, and endless confusion would be the result. The power has also been specially deputed to that department to guard the interests of the city. It is expected to act justly and impartially, and that it will avoid all extraneous influences which might affect an individual not subject to the same responsibilities. Its duty is to see to it that the city shall not be obliged to pay more than a fair equivalent for what it is to obtain, and at the same time to avoid injustice to the party whose property may be acquired; and there is great and manifest fitness in confiding the control of all these proceedings to that department of the city government. The objection that this proceeding was not instituted and carried on before the court by the corporation counsel is not formal, but substantial. It vitally affects the rights of the city whose inhabitants, by way of taxation, must finally pay the price awarded for the property. And the omission of the counsel, if it was in fact omitted, to present this objection when the application was heard was no waiver of it. His duty was not to waive or surrender it, but to insist upon its observance. But if he failed from inadvertence to make the objection, the public interests cannot be permitted to suffer on account of that fact. For the law is mandatory that the law department shall have the charge of the legal business of the city, and it is equally the duty of this court to observe and maintain that mandate. That can be not otherwise now done than by vacating this order, and requiring the commissioners to make their application and conduct their proceedings to obtain the title to this land through the intervention of the law department of the city. The order should therefore be reversed, and the motion denied, without prejudice to a renewal of the application, by the counsel of the city. All concur.