WEINCKIE *v.* NEW YORK CENT. & H. R. R. CO.

(*Supreme Court, General Term, Third Department.* July 11, 1891.)

**1. CONSTITUTIONAL LAW—SETTING OUT TERMS OF ACT AMENDED.**

Laws N. Y. 1884. c. 187, authorizes the common council of the city of Schenectady to pass an ordinance discontinuing a portion of a street to be used as a site for a railroad depot. Laws N. Y. 1884, c. 546, § 2, amendatory thereof, provides that nothing therein shall be construed to authorize the closing of such street without compensation to property owners, to be ascertained, in case of disagreement, in the manner provided by Laws N. Y. 1873, c. 62, tit. 7, (charter of the city of Schenectady,) entitled "An act to amend and consolidate the several acts relative to the city of Schenectady," for appraising damages, and compensation to be made for property taken for public improvements. *Held,* that it was not the intent of the legislature to make the consolidating act referred to a part of said chapter 546, and that such last-named act was not unconstitutional, in failing to embrace within it the terms of the act referred to therein. Const. N. Y. art. 3, § 17.

**2. SAME—VALIDITY OF LOCAL ACT—DISCONTINUING STREET.**

Laws N. Y. 1884, c. 187, authorizing the common council of the city of Schenectady to pass an ordinance discontinuing a portion of a street to be used as a site for a railroad depot, is not in conflict with Const. N. Y. art. 3, § 18, which prohibits the legislature from passing any local act discontinuing any road, highway, or alley.

**3. SAME—RIGHT TO LAY RAILROAD TRACKS—EXCLUSIVE PRIVILEGE.**

Nor is such act a violation of Const. N. Y. art. 3, § 18, which prohibits the passage of any local bill by the legislature granting to any corporation the right to lay down railroad tracks, or granting to any private corporations any exclusive privilege, immunity, or franchise whatever.

**4. MUNICIPAL CORPORATIONS—CLOSING STREET—STATUTORY AUTHORITY.**

Laws N. Y. 1884, c. 187, which authorizes the common council to discontinue and close a portion of Liberty street, in the city of Schenectady, for the purposes of a railroad depot, "to the passage of vehicles, horses, and cattle," is sufficient authority for an ordinance of such council authorizing the railroad company to construct and maintain an iron foot-bridge for pedestrians over the railroad track on the discontinued portion of the street, and to close the surface of the street to pedestrians by the erection of a fence.

**5. SAME—ERECTION OF DEPOT.**

The fact that the depot edifice proper was not placed on the discontinued portion of the street is immaterial, where it appears that the depot sheds extend over the discontinued street space, and that such space was required for depot facilities.

**6. SAME—DAMAGES—REPORT OF COMMISSIONERS—COLLATERAL ATTACK.**

Where commissioners were appointed to assess the damages to property owners resulting from the closing of a street for railroad depot purposes, the regularity and validity of their proceedings, not involving the jurisdiction of the court or the commissioners, cannot be attacked originally in a collateral proceeding to recover damages for injury to plaintiff's property consequent on the closure.

**7. SAME—ORDINANCE—PASSAGE BY MAJORITY VOTE.**

An ordinance of the common council of Schenectady, confirming a report of commissioners appointed by the court to assess damages resulting from closing a street for railroad purposes, is sufficient, if passed by a majority vote, under 2 Rev. St. p. 555, § 27, (8th Ed. p. 2726,) which provides that, whenever any power or authority by law is conferred on three or more persons, the same may be exercised by a majority at a meeting duly convened of the whole number, though the charter of the city provided that such a proceeding must be by a two-thirds vote of the council.

Appeal from circuit court, Schenectady county.

Action by Delia Weinckie against the New York Central & Hudson River Railroad Company, to recover damage alleged to have been sustained by her in the depreciation of the value of her property in Schenectady by the act of the defendant in closing up Liberty street, in that city, and erecting a foot-bridge across the railroad track about 20 feet above the track, parallel or nearly parallel with the original line of the street, which acts are alleged to have been done in connection with the construction of its depot in the city of Schenectady. The plaintiff also asks equitable relief that the obstruction across such street be forthwith removed. The defendant justifies its interference with and obstruction of this street under the authority of chapters

187 and 546 of the Laws of 1884, and the acts of the common council of the city of ·chenectady under the provisions of its charter, and the special authority conferred upon it by the acts above referred to. The action was tried and determined by the judge at the Schenectady circuit, who dismissed the plaintiff's complaint upon the merits, and ordered judgment for the defendant; which was thereupon entered, and from which the plaintiff appeals.

Argued before LEARNED, P. J., and MAYHAM, J.

*R. A. Parmenter,* for appellant. *S. W. Jackson,* for respondent.

MAYHAM, J. The case discloses that the defendant's railroad crossed Liberty street, one of the streets of the city of Schenectady, on grade. For the purpose of enabling the defendant to construct in that city a large and commodious depot, the legislature passed an act (chapter 187, Laws 1884) confering additional power upon the common council of the city of Schenectady in relation to Liberty street, in that city. Sections 1 and 2 of that act are as follows: "The common council of the city of Schenectady is hereby empowered, by a vote of two-thirds of their members, to pass an ordinance discontinuing and closing, for the purpose of a railroad depot and not otherwise, that part of Liberty street, in said city, now crossed by the track of the New York Central & Hudson River Railroad Company, and tracks of the president, managers, and company of the Delaware & Hudson Canal Company, to the passage of vehicles, horses, and cattle." By chapter 546, Laws 1884, section 2 was amended to read as follows: "Sec. 2. Nothing in this act shall be construed to authorize the common council aforesaid to discontinue and close up any portion of said street, without compensating the property owners of the property situate on Liberty street, between the Erie canal bridge and Center street, in said city, for all lawful damages sustained by them; such damages, in case the common council is unable to settle the same with said owners, to be ascertained and determined in the manner now provided by title 7 of the act entitled 'An act to amend and consolidate the several acts relative to the city of Schenectady,' for appraising damages, and compensation to be made for property taken for public improvements." Defendant claims that, under these statutory provisions, the common council of the city of Schenectady was authorized to adopt an ordinance discontinuing the part of Liberty street which was inclosed by the defendant; and that, under the statute and ordinances, the defendant was justified in doing the various acts for the doing of which this action is prosecuted. On the part of the plaintiff, it is insisted that the provisions of the statute above quoted are in violation of sections 17, 18, art. 3, of the state constitution, and are therefore void. Section 17, art. 3, of the constitution, was amended in 1874 so as to read as follows: "No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act." Is this provision violated by the reference in section 2, c. 546, *supra,* to the act entitled "An act to amend and consolidate the several acts relative to the city of Schenectady," without inserting them in it? It would seem that the legislature only intended by their acts to confer a conditional authority upon the common council, in the exercise of which, if lawful damage resulted to property owners, such damage should be ascertained in the manner now provided by law. It did not make the consolidated act to which it refers a part of this act, but rather, by an express provision, left the law for ascertaining damages and compensations to the owners of land condemned, as the same existed under the consolidated acts applicable to that city at the time. I think it can hardly be maintained that the amended provision of the constitution would make it necessary, in order to validate this act, that the entire text of the "Act to amend and consolidate the several acts relative to the city of Schenectady" should be incorpo-

rated in it, and that the omission to do that rendered this act unconstitutional.

It is also objected that this statute violates the second paragraph of section 18, art. 3, of the constitution. That paragraph prohibits the legislature from passing private or local acts for laying out, opening, working, or discontinuing roads, highways, or alleys. It would seem to be an answer to this objection that the legislature did not in this case undertake to pass a bill prohibited by this provision. It assumed by this act to confer authority upon the common council, and did not undertake to exercise the power itself. At most, it only enlarged the power theretofore existing in the common council, who were vested with power and control over the street by the provisions of the charter. Nor do we see that this act of the legislature violated the provisions of paragraphs 11, 12, § 18, art. 3, of the constitution. The act does not grant a right to the defendant to lay down railroad tracks, nor does it grant to the defendant any exclusive privilege. At most, it only confers upon the common council of Schenectady additional power that is not prohibited by the constitutional provisions referred to. In the case of *People* v. *O'Brien*, 38 N. Y. 193, referred to by the plaintiff, the title of the act purported to confer authority upon the board of supervisors to raise money by tax, while the act contained provisions amending the charter of the city, and the court held the act unconstitutional, under section 16, art. 3, of the constitution. That case is quite different in principle from this. That act clearly contained more than one subject, and that subject was not embraced in the title. The act under consideration in the case relates to but one subject,—the enabling of the common council to discontinue a portion of Liberty street. It seems well settled, on authority, that these provisions of the constitution do not prohibit the subjecting of any matter of special legislation to the provisions of other statutes to regulate the procedure to accomplish the purpose of the act. In *People* v. *Banks*, 67 N. Y. 575, when section 17, art. 3, of the constitution came under discussion, the court says: "It is not necessary, in order to avoid conflict with this article of the constitution, to re-enact general laws whenever it is necessary to resort to them to carry into effect the provisions of a special statute; such cases are not within the letter or spirit of the constitution, or the mischief intended to be remedied," (see, also, *In re Lorillard*, 13 N. Y. Supp. 83; *People* v. *Hayt*, 7 Hun, 39;) and it makes no difference that it relates to a local, and not a general, act, (*In re Lorillard, supra*, 84.)

It is also insisted by the plaintiff, if these acts are constitutional, still they only conferred authority upon the common council, by a vote of two-thirds of their number, to pass an ordinance discontinuing and closing for the purpose of a railroad depot, and not otherwise, a portion of Liberty street, to the passage of vehicles, horses, and cattle; and that this statutory authority did not authorize them to pass an ordinance to discontinue such street so as to prevent the travel upon it by pedestrians. The first section of the ordinance, for the purpose of enabling the New York Central & Hudson River Railroad Company to construct a new and commodious passenger depot, closes a portion of Liberty street, and discontinues the same, for the passage of vehicles, horses, and cattle. The second section of the ordinance of the common council permits and empowers the defendant and the Delaware & Hudson Canal Company to construct and maintain an iron foot-bridge over the railroad track, on the discontinued portion of the street, of a prescribed height above the railroad track, and a specified width, and authorizes the defendant, when such bridge is fully completed and ready for use, to construct and maintain a fence on the easterly and westerly line of the discontinued portion of Liberty street, when the discontinued portion of the street shall cease to be a street or thoroughfare except for foot-passengers over such bridge. The third section of such ordinance provides for the method of ascertaining and determining the damages to which land-owners situate on the discontinued street may be en-

titled, and the appointment of commissioners by the Schenectady county court for that purpose. It is urged by the learned counsel for the plaintiff that the common council exceeded the authority conferred by the acts of the legislature in providing for the closing of Liberty street to pedestrians by the erection of a fence.

By title 7 of the charter of the city of Schenectady, the common council are made commissioners of highways of the city, and may open, widen, improve, or repair any street, highway, lane, walk, or alley, and shall have superintendence and control of the streets, highways, lanes, walks, alleys, bridges, culverts, and arches, etc.; and, in addition to these general powers, the acts of the legislature, above referred to, gave them express authority to discontinue and close the portion of Liberty street for the purpose of a railroad depot. The taking of land for a railroad depot is well settled to be a public purpose, and lands for that purpose may be taken by the right of eminent domain, and the rights of all abutting land-owners, including those of the plaintiff, if she have any, are protected, not only by this act by providing for compensation, but by the general law, in the manner prescribed by the constitution. The legislature, in the exercise of its sovereign power, has full control of all public rights in streets and highways, and what it does or authorizes to be done in regard to them cannot be legally resisted, provided that no constitutional right is violated. *People* v. *Kerr*, 27 N. Y. 209–213. As we have seen, the legislature in passing the enabling act, (chapter 187, Laws 1884,) as amended by chapter 546 of same laws, violated no constitutional provision, and it remains to be considered what power they intended to and did actually confer on the common council in relation to the closing of this street. In determining that question, we are to consider what purpose the legislature had in view, and give their act such construction as will effectuate their intention without violating the spirit of the statute.

The rule of construction to govern in cases of doubtful language of a statute is well stated by INGALLS, J., in pronouncing the opinion of the court in *Schermerhorn* v. *City of Schenectady*, 3 N. Y. Supp. 435, which was affirmed on the opinion of the general term in the court of appeals. 24 N. E. Rep. 1091. In this case the learned judge adopted the rule laid down in Smith's Commentaries, § 701, as follows: "Whenever the intention of the maker of a statute can be discovered, it ought to be followed, with reason and discretion, in the construction of the statute, although such construction seems contrary to the letter." In *People* v. *Insurance Co.*, 15 Johns. 358, the rule was stated as follows: "When any words are obscure or doubtful, the intention of the legislature is to be resorted to." The manifest purpose of the legislature was to confer upon the common council such additional powers as to enable them, by ordinance, to close so much of Liberty street as was necessary for the construction and occupancy of a safe and commodious passenger depot for the public use and convenience in the enjoyment of defendant's railroad. It would seem a strained and unreasonable construction of this act to hold that the legislature contemplated that this street should be discontinued and closed as to vehicles, horses, and cattle, and yet that the entire street on a grade with the railroad track should be open, and not discontinued as to pedestrians. Such a construction would be to leave the way physically open and passable, by vehicles, horses, and cattle, as well as to pedestrians; and the only restraint upon the free and uninterrupted passage over it by teams would be the legal effect of the statute and ordinance, without the interposition of any physical barrier, and would seem to render the act utterly senseless and nugatory. To give any effect to the act in harmony with what must have been the legislative intent, we think it must be held that the legislature conferred upon the common council the authority to provide by their ordinance to close the street to vehicles, horses, and cattle, and provide such safe and reasonably convenient way of passage for pedestrians as could be done consistent with the grant

of that part of the street for depot purposes. Section 24, c. 140, Laws 1850, provides that, when railroad tracks cross a highway, such highway may be carried under or over the track, as may be found most expedient, and by section 28 of that act that power is given to all corporations within the state. As provision has been made for discontinuing this street at this point for vehicles, horses, and cattle, and a way only left by implication for pedestrians, the common council, acting, as we have seen, as commissioners of highways, could prescribe the character and dimensions of the bridge under the powers conferred upon them by title 7 of the charter. Nor do we think any private action by any individual would lie against the defendant for an improper or defective construction of this bridge, as the case discloses that all abutting owners are the defendant and the Delaware & Hudson River Canal Company, the city having consented to its construction. But it is not necessary for the decision of this case to determine that question. It is also objected that the depot constructed by the defendant is not on the closed part of Liberty street, but that the depot edifice is between Liberty street and State street; and that the acts of the legislature did not authorize the common council to close and discontinue the street, except for the purposes of a railroad depot. But it will be observed, by reference to the case and maps, that some of the depot sheds extend upon the discontinued street; and, as a depot for a railroad requires room outside of the depot edifice for approaches, passengers, deposit, or baggage, and the standing of trains, the mere fact that the main depot edifice does not stand on the discontinued street is not such a failure to comply with the act as can make the defendant liable in this action. On the contrary, it seems to be a substantial compliance with its provisions, and the same, we think, is true of the location of the bridge. It is quite true, as contended for by the appellant, that when an enabling act confers authority, which was not possessed by the individual or corporation before, that authority must be strictly pursued, (*Trust Co.* v. *Carroll*, 5 Barb. 615;) and upon this point it is claimed that the ordinance of the common council required the erection of the foot bridge over the discontinued part of the street. The language of this ordinance upon this subject is: "The New York Central & Hudson River Railroad Company and the Delaware & Hudson Canal Company are hereby permitted and empowered to construct and maintain an iron foot-bridge over their railroad track on such discontinued portion of said street." The permission given here is to contruct a bridge over the railroad track, and on the discontinued part of the street. As an elevated bridge could not be literally on the street, we think that the fair construction of the language used is that the bridge was to be constructed at this point with a view of accommodating pedestrians, and, if that is accomplished, the spirit and letter of the ordinance is substantially complied with. The case might be different if the property right of private citizens were involved, but in this case the defendant erects the bridge on its own land.

It is also insisted by the plaintiff that no lawful proceedings have been had to ascertain the lawful damage of property owners, and that the defendant cannot justify the closing of the street and the erection of the foot-bridge for that reason. The case discloses the appointment, on notice and without objection, by the county court of Schenectady, of three commissioners to ascertain the damages, if any, by reason of closing this street; and that they duly qualified, took the oath of office, gave notice of hearing, met, and made their report. It is not perceived that any act was omitted which was required to confer jurisdiction on the county court for their appointment, and, when appointed, no jurisdictional act was omitted by them. They qualified, gave notice of hearing, met, and made and filed their report. It is urged that only two viewed the premises. No such inference can be drawn from the report, nor does the trial court find that, as a fact, any of the steps necessary to confer jurisdiction on the commissioners were omitted. The acts provided that

the lawful damage which property owners may sustain, in case the common council is unable to settle the same, should be ascertained and determined in the manner provided by the city charter, and we discover no particular in which the provisions of title 7 of the charter, which embraces the subject of the ascertainment of damages, has not in all things been complied with. But if any step was omitted which might amount to an irregularity, not affecting the jurisdiction of the county court, or commissioners, we do not see how it can be raised on this trial for the first time; especially as the plaintiff had notice of the proceedings, both before the county court and commissioners, and cannot now attack them collaterally, as such irregularites, if any existed, should have been reviewed on *certiorari*. At all events, the objections, if any existed, should have been taken at the time of the application for the appointment of the commissioners. *New York, C. & H. R. R. Co.* v. *Metropolitan Gas-Light Co.*, 5 Hun, 204, affirmed, 63 N. Y. 335; *In re New York, L. & W. R. Co.*, 33 Hun, 152.

It is also contended on the part of the plaintiff that the report of the commissioners appointed by the county court was never confirmed by a two-thirds vote of the common council, and that it was not, therefore, a valid act. The Revised Statute (2 Rev. St. p. 555, § 27) provides that, whenever any power or authority is conferred by law on three or more persons, such power or authority may be exercised by a majority, at a meeting duly convened, of the whole number. The contention of the plaintiff is based upon the provisions of title 3 of the city charter. We do not think that the resolution confirming this report comes within the provision of section 6 of that title, but, rather, within the provisions of the Revised Statutes, above referred to. The questions above discussed embrace what appear to be the chief ground of error claimed by the learned counsel for the plaintiff, for which he asks that the judgment in this case should be reversed. We have examined the other numerous objections and exceptions taken by the learned counsel for the appellant on the trial, and to the findings and refusals of the learned trial judge, and his conclusion of law, but find no error in them for which this judgment should be reversed. Judgment affirmed, with costs.