HUDSON RIVER TELEPHONE COMPANY, Appellant, *v.* WATER-
VLIET TURNPIKE AND RAILWAY COMPANY, Respondent.

The immunity from liability of a corporation, exercising a power or privi-
lege conferred by law for the public benefit, for a private injury, where
the damage sustained is the result of the proper exercise of the power
or privilege, does not extend to acts which are *ultra vires*, or to those
which are equivalent to a confiscation or condemnation of property
rights, unless provision is made for due compensation.

Under and by the act of 1862 (Chap. 233, Laws of 1862), authorizing the
W. T. Co. to construct a street railroad, and operate the same by any
mechanical or other power except steam, the company was authorized,
upon obtaining the consent of the proper municipal authorities, to adopt
electricity as a motive power.

Said act may not be limited to the methods of operating such railroads
known and in actual use at the time of its passage, nor is the company
irrevocably bound by the choice of motive power first made after the
passage of the act.

So also, under the power given by that act to the common council of the
city of Albany to impose such restrictions as, in its judgment the inter-
ests of the public require, that body is not bound by the limitations
first imposed, but the authority is coincident with the company's right
of selection.

Accordingly *held*, that said company having obtained the consent of the
common council of the city of Albany, was authorized to adopt and
use what is known as the single-trolley system of electrical propulsion,
it appearing and having been found that it is the best system thus
far devised, and is not prejudicial to public health, or dangerous.

*People ex rel.* v. *Newton* (112 N. Y. 396) distinguished.

Also *held*, that said company was not subject to the provision of the
Street Surface Railroad Act (§ 12, chap. 252, Laws of 1884, as amended
by chap. 531, Laws of 1889), requiring the approval of the railroad com-
missioners and the consent of the owners of one-half the property upon
the streets, as it came within the saving clause in said act ( § 18), which
declares that the act shall not interfere with, repeal or invalidate any
rights theretofore acquired.

Inchoate as well as perfected rights are saved by such a clause.

The primary and dominant purpose of a street being for public passage,
any appropriation of it by legislative authority to other objects will be
deemed to be in subordination to this use, unless a contrary intent is
clearly expressed.

The fact that inconvenience or loss results to one, having no easement in a
street, from the adoption of a mode of locomotion authorized by law,
which is carefully and skillfully employed, and which does not destroy

or impair the usefulness of the street, does not, in the absence of a statute imposing a liability, give a right of action.

In an action brought by plaintiff, a corporation organized under the act providing for the incorporation of telegraph companies (Chap. 265, Laws of 1848), to restrain defendant from operating its road by the single-trolley system upon certain streets in the city of Albany, *held*, that as plaintiff had accepted its franchise, which authorizes it to construct and operate its lines upon streets and highways upon the express condition that they shall not be so constructed as to incommode the public use, and as defendant was occupying the streets in such a manner as to expedite public travel and promote the public use to which they were devoted, plaintiff's franchise was of a subordinate character and it could not complain that the system adopted by defendant interfered with the operation of its lines; that it was part of plaintiff's compact with the state that the maintenance of its lines shall not prevent the adoption of any safe, convenient and expeditious mode of travel, such as defendant's system was shown to be.

*Story* v. *N. Y. E. R. R. Co.* (90 N. Y. 122); *Lahr* v. *M. E. R. Co.* (104 id. 268), distinguished.

Also *held*, the fact that plaintiff's system of communication was only partially established in the public streets, its telephones being located and its wires grounded upon private property, and that defendant's method permitted the electric current used to propel its cars to escape and flow to plaintiff's grounded wires, thus inflicting serious loss, did not give a right of action, as the use of its grounded wires was a part of its system of telephonic communication through the streets which it maintains under the permission of the state and subject to the condition that it shall not incommode the use of the streets by the public; that its franchise was indivisible and entirely subservient to the lawful uses of the streets for public travel; that having accorded to the public an unrestricted right of passage, it could not question the form in which that right is enjoyed so long as it is lawful and is utilized with proper care and skill.

A motion by defendant for an extra allowance was denied upon the ground of want of power, the reason assigned being "that the action being to restrain defendant from employing a particular system only, and over a part only of its road, the franchise was not involved, and there is, therefore, no basis on which an allowance can be estimated." *Held*, error; that as the subject-matter litigated was the right of defendant to use the single-trolley system, if the right thus sought to be enjoined had a money value, and there was any evidence to establish such value, the court had jurisdiction to entertain the motion, and it was its duty to exercise its discretion and dispose of the application upon the merits.

*H. R. T. Co.* v. *W. T. Co.* (61 Hun, 140), reversed.

(Argued June 15, 1892; decided October 11, 1892.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made September 8, 1891, which reversed a judgment in favor of defendant entered upon the report of a referee, and granted a new trial.

This was an action by plaintiff, a telephone company, to restrain defendant from operating its street railroad by means of an electric motor, known as the single-trolley method, in certain streets of the city of Albany, on the ground that it would cause great and irreparable injury to plaintiff's telephone system and service.

Plaintiff was incorporated in April, 1883, under the act of 1848 (Chap. 265), " to provide for the incorporation and regulation of telegraph companies," and the several acts amendatory thereof. Defendant was incorporated in 1828 (Chap. 141, Laws of 1828) as a turnpike company, and constructed its road from the city of Albany to a point in the present village of West Troy. By chapter 233 of the Laws of 1862, the defendant was authorized to construct and maintain railroad tracks on its turnpike road, and to extend the same through the villages of West Troy and Cohoes, the town of Watervliet and into the city of Albany, and with the consent of, and under such restrictions as might be deemed proper by the common council of the city of Albany, to extend and maintain its tracks through Broadway in said city to the south ferry, and to operate its road by " any mechanical or other power  *  *  *  which the said company may choose to employ." Such consent was obtained, and defendant's tracks laid and the road operated by horse power until 1889. On June 17, 1889, defendant obtained permission from the common council of said city to use the single-trolley system of electric propulsion, and before this action was commenced had fitted up its road for operation by said system. Defendant necessarily used a powerful current of electricity, some of which escaped and passed through the earth and other conductors and affected plaintiff's lines so that its customers were annoyed with loud noises and its switchboard affected when one of defendant's cars passed near any of plaintiff's wires, some of which ran on the streets upon

which defendant's tracks were laid. In consequence, the use of plaintiff's telephones were frequently rendered difficult and unsatisfactory and many times impossible. The referee, before whom the case was tried, found that an interference of the currents could be prevented by plaintiff using a complete metallic circuit, which would entail great expense and interference with its business, and by defendant substituting the double for the single-trolley system, or using the storage-battery system, which would entail less expense than for plaintiff to change its system.

Further facts are stated in the opinion.

*John S. Wise* for appellant. An electric street railway using the public highway occupies the same, and enjoys the easement of travel thereon as of equal dignity with any, all and every other person or vehicle upon the public highway; and that such enjoyment of the public highway for travel is within the original purposes for which the public highways were opened. Such enjoyment of the easement is pursuant to the primary object of dedication of the highway. (*People* v. *Kerr*, 27 N. Y. 188; *Mahady* v. *Bushwick R. R. Co.*, 91 id. 148; *Hussner* v. *B. C. R. R. Co.*, 114 id. 437; *S. R. Co.* v. *Cumminsville*, 14 Ohio St. 546; *Hobart* v. *Milwaukee, etc.*, 27 Wis. 94; *Hinchman* v. *P. H. R. R. Co.*, 17 N. J. Eq. 76; *L. & A. H. R. R. Co.* v. *Androscoggin*, 79 Me. 363; *Barney* v. *Keokuk*, 94 U. S. 324; *Pittsburg Appeal*, 122 Penn. St. 530.) The law of New York, upon which the plaintiff relies for its existence, recognized in express terms the undoubted principle that if the telegraph companies were to be permitted to enter the public highways at all, they would go upon such highways, not as peers, but as vassals. The law under which the telegraph companies are organized grants them no co-ordinate rights with travelers upon the public highway, but assigns them to a secondary and subordinate position, expressly placing them under the condition that in constructing their lines along and upon the public roads or highways, they may do so " provided the same shall not be so constructed

as to incommode the public use of said roads or highways."
(*Blanchard* v. *W. U. T. Co.*, 60 N. Y. 510; *Knox* v. *Mayor*,
etc., 55 Barb. 404; *Story* v. *E. R. R. Co.*, 90 N. Y. 122;
*Sheldon* v. *W. U. T. Co.*, 51 Hun, 591; *W. T. Co.* v. *C. L.
Co.*, 18 J. & S. 488; *Tuttle* v. *B. E. Co.*, Id. 464; *Willis*
v. *E. T. & T. Co.*, 34 N. W. Rep. 337; *Hewitt* v. *W. U. T.
Co.*, 13 Wash. Law Rep. 461; Dillon on Mun. Corp. [4th ed.]
§§ 698, 698 a.)   Even if, in the enjoyment of a common right
of user of the highway, a user in which both appellant and
appellee are of equal dignity, the appellant has been guilty of
a violation of the appellee's rights, the way to redress those
rights is not by an injunction. (*Heerman* v. *B. S., etc., Co.*, 8
Biss. 334; *M. B. Co.* v. *U. & S. R. R. Co.*, 6 Paige, 554.)
It is further claimed for the defendant that admitting all the
injuries set forth in the complaint, the damage sustained is
*damnum absque injuria.* (*Dillon* v. *A. O. Co.*, 49 Hun,
565; *Frazier* v. *Brown*, 12 Ohio St. 294; *P. C. Co.* v.
*Sanderson*, 113 Penn. St. 141; *P. R. R. Co.* v. *Merchant*,
119 id. 541; *Cassady* v. *Cavenor*, 37 Iowa, 300.) It is
further contended that the case made by the plaintiff shows
that the plaintiff has no equity. (Waterman's Eden on Injun.
10, 11; High on Injun. § 35; Hilliard on Injun. [3d ed.] § 32;
1 Barton's Ch. Pr. 435; *Branch* v. *Yauba*, 13 Cal. 190;
*Wood* v. *Sutcliffe*, 2 Sim. [N. S.] 163; 16 Jur. 75; 8 Eng.
L. & E. 217.)

*Marcus T. Hun* for appellant. The defendant is prior in
the time of acquiring its right to use electricity upon its
system and prior in equity to the plaintiff. (*In re City of
Buffalo*, 68 N. Y. 172; *Mayor, etc.*, v. *N. R. Co.*, 4 E. &
B. 433; *N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1; *People
ex rel.* v. *Newton*, 112 id. 396; *In re N. Y. E. R. R. Co.*,
70 id. 338.) The plaintiff's right to introduce its telephone
system into the territory already occupied by the defendant
was subsequent in time and subordinate in law to the rights
claimed by the defendant. (Laws of 1848, chap. 265, § 5;
*Bahady* v. *B. R. R. Co.*, 91 N. Y. 148; *M. T. & T. Co.*

v. *C. L. Co.*, 18 J. & S. 488; *Sheldon* v. *W. U. T. Co.*, 51 Hun, 591; *Blanchard* v. *W. U. T. Co.*, 60 N. Y. 510; Wood on Nuisances, § 759; Morawetz on Corp. § 460; 1 Waterman on Corp. § 174; Lewis on Em. Domain, § 142. The General Telegraph Act confers no exclusive franchises. (Laws of 1884, chap. 534, § 4; *M. B. Co.* v. *U. & S. R. R. Co.*, 6 Paige, 554.) The injury is too intangible and too undefined to support a cause of action. (*S. W. Co.* v. *City of Syracuse*, 116 N. Y. 167; *Charles River Bridge Case*, 11 Pet. 420; *Turnpike Co.* v. *State*, 3 Wall. 210.) The use of an electric current by the defendant, in the movement of its cars, does not constitute a nuisance. (Laws of 1889, chap. 531.) The rights claimed by the telephone company, viz.: "An exclusive franchise," the legislature is forbidden by the Constitution to give (Const. N. Y. art. 3, § 18.) The owners of the land affected, alone, if any one, can sue to prevent the electric current being discharged into it. (*Wager* v. *T. U. R. R. Co.*, 25 N. Y. 526; *Lahr* v. *M. E. R. R. Co.*, 104 id. 291; *Sheldon* v. *W. U. T. Co.*, 51 Hun, 591.) The injury complained of by the plaintiff is *damnum absque injuria*. (*Lansing* v. *Smith*, 8 Cow. 146; *Governor* v. *Meredith*, 4 T. R. 794; *Bolton* v. *Crowther*, 2 B. & C. 703; *Graves* v. *Otis*, 2 Hill, 466; *Wilson* v. *Mayor, etc.*, 1 Denio, 595; *Benedict* v. *Goit*, 3 Barb. 459; *Green* v. *Borough of Reading*, 9 Watts. 382; *Benry* v. *P. & A. B. Co.*, 8 W. & S. 85; *Goszler* v. *Corporation of Georgetown*, 6 Wheat. 593; *In re Furman Street*, 17 Wend. 667; *Uline* v. *N. Y. C. R. R. Co.*, 101 N. Y. 98; *Radcliff* v. *Mayor, etc.*, 4 id. 195; *Davis* v. *Mayor, etc.*, 14 id. 506; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 id. 42; *Kellinger* v. *F. S. etc., R. R. Co.*, 50 id. 206; *Arnold* v. *H. R. R. R. Co.*, 49 Barb. 108; Dillon on Mun. Corp. [4th ed.] § 987.) The electrical system to be used by the defendant, not having been defined by the legislative authority must be determined upon and selected by it, and this discretionary power of selection is not subject to review by the courts. (*Paine* v. *Vil. of Delhi*, 116 N. Y. 224, 229; *Lansing* v. *Toolan*, 37 Mich. 152; *Ely* v. *City*

*of Rochester*, 26 Barb. 133.) To entitle the plaintiff to recover damage alleged to have been caused by the act of the defendant, it must show that the act was done maliciously or negligently. (*Hadleman* v. *Bruckhart*, 9 Wright, 517, 518; *Platt* v. *Johnson*, 15 Johns. 217; Gould on Waters, § 280; *Delhi* v. *Youman*, 45 N. Y. 362; *Bliss* v. *Greeley*, 45 id. 671; *Bloodgood* v. *Ayers*, 108 id. 400–407; *Barkley* v. *Wilcox*, 86 id. 140; *Acton* v. *Blundell*, 12 M. & W. 324; *Hadleman* v. *Bruckhart*, 45 Penn. St. 519.) The order appealed from denying a motion for extra allowance is reviewable in this court. (*Shiels* v. *Wortman*, 126 N. Y. 650.) The value of the franchise is a proper basis for an additional allowance. (*Conaughty* v. *S. C. Bank*, 92 N. Y. 401; *People* v. *U. & D. R. R. Co.*, 128 N. Y. 240–251.) The subject-matter of the suit, though not a franchise, constitutes a proper basis for an additional allowance. (*People* v. *N. Y. & S. I. F. Co.*, 67 N. Y. 71; *Lattimer* v. *Livermore*, 72 id. 174; *Johnson* v. *S. F. G.*, etc., *Assn.*, 122 id. 330; *Barker* v. *Town of Oswegatchie*, 62 Hun, 208.) The hardship to the plaintiff, if any exists in this case, is not to be considered. (*Conaughty* v. *S. C. Bank*, 28 Hun, 373.) The value of the franchise was properly shown. (*Johnson* v. *S. F. G. M. Assn.*, 122 N. Y. 330; *Munro* v. *Smith*, 23 Abb. [N. C.] 276; *People* v. *A. & S. R. R. Co* 5 Lans. 25–36.)

*Edwin A. Countryman* and *John A. Delehanty* for respondent. The plaintiff is lawfully in possession of its lines and of such land as is necessary to be used in operating them. (Laws of 1848, chap. 365; Laws of 1853, chap. 471, *People* v. *M. T. Co.* 31 Hun, 596; *C. & P. T. Co.* v. *B. & O. T. Co.*, 7 At. Rep. 809; 66 Md. 399; *W. T. Co.* v. *City of Oshkosh*, 62 Wis. 32; *Attorney-General* v. *E. T. Co.*, L. R. [6 Q. B. Div.] 244; *People* v. *O'Brien*, 111 N. Y. 1.) Lands or property held by a corporation for a public use cannot be taken by another corporation for an inconsistent use. (*In re City of Buffalo*, 68 N. Y. 167; *In re N. Y., L. E. & W. R. R. Co.*, 99 id. 12–23; *P. T. Co.* v. *H.*

*R. T. Co.*, 19 Abb. [N. C.] 466; *Lahr* v. *M. E. R. Co.*, 104 N. Y. 268.) The franchise of the defendant gives it no right to operate its cars through the city of Albany by electricity. (Laws of 1889, chap. 531; *Davis* v. *Mayor, etc.*, 14 N. Y. 506; *People* v. *B. R. Co.*, 126 id. 29; *Mayor, etc.*, v. *Root*, 8 Md. 95; *Brown* v. *Pendergast*, 7 Allen, 427; *People* v. *U. Ins. Co.*, 15 Johns. 380, 381; *Jackson* v. *Collins*, 3 Cow. 89; *Holmes* v. *Carley*, 31 N. Y. 290; *Hoyle* v. *P. & M. R. R. Co.*, 54 id. 332; *People* v. *Lacombe*, 99 id. 49; *Delafield* v. *Brady*, 108 id. 524–529; *Riggs* v. *Palmer*, 115 id. 506; *People* v. *Thompson*, 98 id. 6.) The simple question is whether, under these circumstances, the defendant ought and should be required to exercise its franchise in such a manner as not to injure or interfere with the property of the plaintiff. We submit that, in accordance with the great preponderance of modern authority, the maxim, *sic utere tuo ut alienum non laedas*, applies to this case. (*Bohon Case*, 122 N. Y. 18; *Cogswell Case*, 103 id. 10; *Brieson Case*, 103 id. 645; *Campbell* v. *Leamon*, 63 id. 568; *Aikin Case*, 20 id. 370; *Baskell Case*, 108 Mass. 208; *Franklin Co. Case*, 67 Me. 46; *Clark Case*, 10 R. I. 35; *Brayton Case*, 113 Mass. 218; *Boston Case*, 19 How. [U. S.] 263; *Noyes* v. *Bemphill*, 58 N. H. 536; *Brown* v. *Bowen*, 30 N. Y. 519; *Lansing* v. *Wiswall*, 5 Den. 213; *Stiles* v. *Booker*, 7 Cow. 266; *Wheeler* v. *Gilsey*, 35 How. Pr. 139; *Applegate* v. *Morse*, 7 Lans. 59; *Carleton* v. *Cote*, 56 N. H. 130; *Blaisdell* v. *Stephens*, 14 Nev. 17; *Shaffer Case*, 37 La. Ann. 242; *Reinhardt* v. *Mentasti*, L. R. [41 Ch. Div.] 685.) The one that uses or produces the dangerous element must also furnish the safeguards. (Cooley on Torts, 337; *Brill* v. *Flagler*, 23 Wend. 353; *Cooper* v. *Barber*, 3 Taunt. 99; *Bloodgood* v. *Ayers*, 108 N. Y. 400.) When the defendant received its license from the city to operate its road by electricity, it impliedly agreed to operate it in such a way as not to affect the rights of others. (*Vill. of Port Jervis* v. *Bank*, 96 N. Y. 557; *Mairs* v. *M. E. R. R. Co.*, 89 N. Y. 498–505; *Reed* v.

*State*, 108 id. 407–412; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 id. 10; *B. & P. R. R. Co.* v. *F. B. Church*, 108 U. S. 317; *Bohan Case*, 122 N. Y. 18; Wood on Nuisances, §§ 754, 784, 785; *Bickok* v. *Bines*, 23 Ohio St. 523; *G. L. & C. Co.* v. *Vestry, etc.*, L. R. [15 Q. B. Div.] 1; *Geddis* v. *Proprietors, etc.*, L. R. [3 App. Cas.] 430; *Atty.- Gen.* v. *G. L. & C. Co.*, L. R. [7 Ch. J. Div.] 217; *Atty.-Gen.* v. *C. H. L. Asylum*, L. R. [4 Ch. App.] 146; *Coats* v. *C. R. W. Co.*, 1 R. & M. 181; *Queen* v. *B. N. Co.*, 6 B. &. S. 631, 652; *Appeal of P. J. R. Co.*, 122 Penn. St. 512, 531; *Crawford* v. *Rambo*, 44 Ohio St. 279, 287; *I. G. L. & C. Co.* v. *Broadbent*, 7 H. L. C. 600, 610; *Reinhardt* v. *Mentasti*, L. R. [42 Ch. Div.] 685, 690; *Atty.-Gen.* v. *C. C. G. Co.*, L. R. [4 Ch. App.] 71, 80, 81.) It is no defense to say that plaintiff's lines are so established that they facilitate the injury. (*Fiere* v. *B. & S. L. R. R. Co.*, 22 N. Y. 204.) The plaintiff being first in possession, is first in law and equity. (Pom. Eq. Juris. § 414; *L. S. & M. S. R. Co.* v. *N. Y. C. & S. L. R. Co.*, 8 Fed. Rep. 858.) The injury to the plaintiff is irreparable. (Wood on Nuisances, § 770; *Commonwealth* v. *P., etc., R. R. Co.*, 24 Penn. St. 159; Gould on Waters, § 508.) The plaintiff is entitled to an injunction. (*Dry Dock* v. *Mayor, etc.*, 47 Hun, 221; *P. G. Co.* v. *C. G. Co.*, 89 N. Y. 497; *Story Case*, 90 id. 122.) There is nothing included within this action to form a basis for an extra allowance. (*Spofford* v. *T. L. Co.*, 9 J. & S. 230; *Connaughty* v. *S. C. Bank*, 92 N. Y. 401; *Spofford* v. *T. L. Co.*, 41 J. & S. 231; *Coates* v. *Goddard*, Id. 132; *People* v. *A. & S. R. R. Co.*, 5 Lans. 36; *Coleman* v. *Chauncey*, 7 Robt. 578; *A. D. Co.* v. *Libbey*, 45 N. Y. 499.) The value of the franchise cannot be taken as a basis. (*People* v. *A. & S. R. R. Co.*, 5 Lans. 25; *People* v. *G. V. R. Co.*, 95 N. Y. 666, 667; *Johnson Case*, 122 id. 330, 337; *People ex rel.* v. *Adams*, 38 N. Y. S. R. 880; *Jaeger's Co.* v. *Boutillier*, 43 id. 381; *H. F. Ins. Co.* v. *G. F. Ins. Co.*, Id. 454; *People* v. *U. & D. R. Co.*, 128 N. Y. 240, 251.) The loss to the defendant and the expenses which

it has been put to by reason of the injunction, do not constitute a basis or a reason for an extra allowance. (*Connaughty* v. *S. Bank*, 92 N. Y. 401, 404.) Where the case is one of hardship to the defeated party the allowance will not be granted. (*Losee* v. *Bullard*, 54 How. Pr. 322.)

MAYNARD, J.   All the injuries of which the plaintiff complains are due to the adoption by the defendant of the single-trolley system of electric propulsion. It becomes, therefore, of the first importance to determine whether this change of motive power was authorized by law. The plaintiff makes a vigorous attack upon the right of the railway company to the enjoyment of such a franchise and urges many grounds in support of its position. We cannot assent to the argument of the learned counsel for the defendant that the determination of this question is immaterial, because the state alone, by its attorney-general, can bring suit for a usurpation of corporate powers, or, because ordinarily, the local authorities must prosecute for an unlawful obstruction of the streets, not involving the appropriation of private property. In the case of a corporation, exercising a delegated authority for the public benefit, the actionable quality of a private injury resulting therefrom may depend upon the legislative will, and the aggrieved party may be without remedy if the damage sustained is the result of the proper exercise of a power or privilege conferred by law, and a right of action is not given by express enactment. This immunity from liability does not, however, extend to acts which are *ultra vires*, or which are equivalent to a confiscation or condemnation of the property rights of the citizen, unless provision is made for due compensation. If the sovereign power has never granted to the defendant the right to make use of electricity in the traction of its cars in the streets of Albany, it must respond to the plaintiff and to all others whose lawful pursuits are invaded by its illegal procedure.

But we think it is clear that under the act of 1862 (Ch. 233), and the ordinances of the common council of the city, the defendant was invested with the authority to adopt this method

of transportation, and to place in the streets in question the apparatus and fixtures necessary for its practical and efficient use. The choice of a motive power is not expressly limited in the statute, except by the exclusion of the force of steam. It is not impliedly limited, except that the power selected must not be of such a kind or require such a mode of application as will make it a public nuisance, or render the passage of the streets unsafe or dangerous for travelers availing themselves of the ordinary means of locomotion.

The report of the referee removes all doubt with reference to the safety and practical usefulness of the system adopted by the defendant. He finds, in substance, that it is the most efficient and economical, and the best thus far devised, and less liable to accidents, through the displacement of machinery, than any other trolley system; that it subserves the public interests and satisfies the public wants, with respect to transportation; that it is not prejudicial to the public health, or dangerous to human life; and that no other system of electric propulsion of cars has thus far been demonstrated to be as practicable, effective and advantageous, both to the public and to private interests, as the overhead, single-trolley system.

As the evidence is not contained in the record, these findings must be deemed to have been supported by competent proofs, and they leave no room for the contention that the use of this system is unsafe, or dangerous, or in any degree a public nuisance.

The act of 1862 cannot properly be limited to such methods of operating street surface railways in cities as had then been invented and were then in actual use. The words of the statute are to be interpreted according to their natural and obvious meaning, and, as the terms employed are not ambiguous, extrinsic facts are not available to restrict the authority which it plainly confers. The language, literally construed, includes undiscovered, as well as existing modes of operation. Electricity, as a natural and applied force, was then well known and it is reasonable to infer that its adaptation as a propelling power was even then anticipated. It would be an unjust

reflection upon the wisdom and intelligence of the law-making body to assume that they intended to confine the scope of their legislation to the present, and to exclude all consideration for the developments of the future. If any presumption is to be indulged in, it is that general legislative enactments are mindful of the growth and increasing needs of society, and they should be construed to encourage, rather than to embarrass the inventive and progressive tendency of the people. The application by the defendant for this new grant of power, must have reminded the legislature that in thirty years its original franchise of a turnpike way had proved inadequate for the wants of a thickly populous community, and it could not have failed to perceive that in a like period of time the operation of street cars by horse power might become obsolete, or undesirable. It, therefore, wisely provided for the occurrence of such an emergency.

It is not to be denied, that it is a sound rule of statutory construction which permits nothing to be taken in a grant of corporate powers, that is not plainly expressed, or unequivocally given, or not demanded by necessary implication. The defendant claims nothing more ; but the plaintiff endeavors to cut down the franchise bestowed by eliminating from the statute the general words of the grant. As in 1862 these railways were run exclusively by animal power, the provision in section 4 of the act, which authorizes the defendant to adopt any mechanical or other power, or the combination of them, which it might choose to employ, except steam, was superfluous, if its range of selection is to be confined to the motive forces which had then been discovered and employed. The history of plaintiff's franchise is instructive upon this point. It is an intruder in the public streets and not possessed of any property rights which a court of equity can be invoked to protect, if the canon of construction which it insists upon applying to the grant of the defendant's franchises, shall be allowed to prevail. It is incorporated under the act of 1848 (Chap. 265), providing for the formation of telegraph companies. At that time, and for twenty years afterwards, the

art of telegraphy, as known and practiced, did not include the transmission of human speech by means of the telephone over wires strung upon poles.   But it has been held in other states and countries, and, as we think, rightly, that this form of transmitting messages through the medium of an electric current passing over extended wires, is authorized by a statute for the incorporation of telegraph companies, although when the act was passed such form of communication was unknown. (*Wisconsin Telephone Co.* v. *Oshkosh*, 62 Wis. 32; *Cumberland Telephone & Tel. Co.* v. *United Electric Railway Co.*, 42 Fed. Rep. 273; *Attorney-General* v. *Edison Telephone Co.*, L. R. [6 Q. B. D.] 244.)

It would also be a narrow and illiberal construction of the statute to hold that the defendant was irrevocably bound by the choice of a motive power made in 1862.   It then selected the only practicable one, but the authority to employ others was not thereby exhausted.   It was a continuing privilege and was intended to be potential whenever and as often as the means of public travel might be improved or facilitated by its exercise.   Equally flexible was the power given to the common council of the city to impose such reasonable conditions upon the enjoyment by the defendant of the franchises of a street railway company as in their judgment the interests of the public seemed to require.   Their authority, in this respect, was coincident in extent with the company's right of selection.   They could limit the municipal assent to a railroad operated in a specified way, as they did by the ordinance of 1862, and while that remained unmodified no other method could be lawfully used, and they could, by a subsequent ordinance, as in 1889, authorize the necessary changes to be made in the equipment of the streets for the introduction of electricity as a propelling force.   This power is fairly inferable from the original act, and may also, perhaps, be deduced from the provisions of the city charter, which authorize them to regulate the use of the streets by railways.

This case is clearly distinguishable from that of the *Third Avenue Railroad* (112 N. Y. 396) cited at length by plain-

tiff's counsel.   There the railroad company had no express grant of legislative authority and the consent of the municipality was refused.   It attempted to override the local authorities and compel them by mandamus to give their approval to the opening and excavation of the streets for the purpose of substituting a subsurface mode of operation, when the granting of the permission plainly involved the exercise of judgment and discretion.   It was held that under such circumstances the department of public works could not be coerced to act favorably upon the company's application.   But the case is not authority for the broad proposition, for which the plaintiff contends, that where the right to select a motive power is expressly given and is not limited, either as to time or kind, and a selection has been made with the approval of the city authorities, the company cannot subsequently adopt a new and better system of propulsion upon obtaining the municipal consent thereto.

The defendant was not subject to the provisions of section 12 of the Street Surface Railroad Act of 1884 (Ch. 252), as amended by chapter 531 of the Laws of 1889, requiring the approval of the railroad commissioners and the consent of the owners of one-half in value of the property abutting upon the streets.

It had the right to make the change under the act of 1862 upon obtaining the consent of the common council, and hence it is embraced within the saving clause contained in section 18, which declares that the act of 1884 shall not interfere with, repeal, or invalidate any rights theretofore acquired under the laws of the state by any horse railroad company, or affect or repeal any right of an existing street surface railroad company to construct, extend, operate and maintain its road in accordance with the terms and provisions of its charter and the acts amendatory thereof.   Inchoate, as well as perfected rights are saved by such a provision.   (*N. Y. Cable Co.* v. *Mayor, etc.,* 104 N. Y. 1.)

The defendant's authority to use electric motors in the propulsion of its cars in the streets of Albany and to operate them

by the single-trolley system, cannot, therefore, be successfully questioned, and, unless some actionable damage has resulted, or will result, to the plaintiff therefrom, its complaint was properly dismissed by the trial court.

There is no question of prior equities involved. It is a matter of strict legal right. Neither priority of grant nor priority of occupation can avail either party. The plaintiff has a franchise which is entitled to protection, but the prime difficulty it encounters grows out of its subordinate character. It has been given and accepted upon the express condition that it shall not obstruct or interfere with the enjoyment by the defendant of its franchises. The plaintiff is not using the streets for one of the purposes to which they have been dedicated as public highways, while the defendant is occupying them in such a manner as to expedite public travel and promote the public use to which they were originally devoted. The condition contained in the plaintiff's grant would have been implied had it not been expressly named.

The primary and dominant purpose of a street is for public passage, and any appropriation of it by legislative sanction to other objects must be deemed to be in subordination to this use, unless a contrary intent is clearly expressed. The inconvenience or loss which others may suffer from the adoption of a mode of locomotion authorized by law, which is carefully and skillfully employed, and which does not destroy or impair the usefulness of a street as a public way, is not sufficient cause for a recovery, unless there is some statute which makes it actionable. A different rule prevails if there has been an encroachment upon private rights to the extent of an appropriation of private property, and it was upon this ground that the decision in the elevated railroad cases was placed. (*Story v. N. Y. E. R. R. Co.*, 90 N. Y. 122; *Lahr v. Met. E. R. R. Co.*, 104 id. 268.) It was there held that an abutting owner has an easement of light, air and access in the street in front of his premises, of which he cannot be lawfully deprived without compensation, by the erection and use of an elevated railway structure.

But the plaintiff has no easement in the public streets. It is there by virtue of a legislative grant, revocable at the pleasure of the power which made it, constituting, while it continues, a valuable franchise, which is recognized as property in the fullest sense of the term. (*People, etc.,* v. *O'Brien,* 111 N. Y. 1.) The plaintiff's title to this property is, however, encumbered by a condition which diminishes its value, and it cannot rightfully complain of the burden which it has voluntarily assumed. It is a part of its compact with the state that the maintenance of its lines of communication shall not prevent the adoption by the public of any safe, convenient and expeditious mode of transit such as the defendant's system has been shown to be. It is not deprived of any property right, but is simply compelled to yield the subservience which it is bound to render under the charter which gave it existence.

These considerations necessarily dispose of one of the grounds upon which the plaintiff claims to be entitled to relief from the special injury sustained by the acts of the defendant, namely, the derangement of the electric currents upon its lines of wire by means of induction, as it is called, in electrical dynamics.

It seems to be indispensable to the successful prosecution of the plaintiff's business, that it should make use of an exceedingly weak and sensitive current of electricity. By a law of electric force, not clearly defined or understood, the transmission of a powerful current, such as the defendant must use to supply motion to its cars, along a line of wire parallel with and in close proximity to the plaintiff's wires, induces upon the latter an additional current, which renders the operation of the plaintiff's telephones at all times difficult and sometimes impracticable. It is found that this disturbance cannot be avoided by the defendant without a complete change of the system adopted, and the use of motors which are more expensive, more dangerous and less useful and efficient. It is obvious, that to require such change to be made would be to grant to the plaintiff, by a decree of the court, that which the legislature has expressly and intentionally withheld. But the

plaintiff is exposed to another danger which deserves consideration. Its system of communication is only partially established in the public streets. Its telephones are located upon the premises of its subscribers and patrons, and at a central exchange, which is upon private property. Its instruments are connected by branch wires with the main wires suspended upon the poles in the streets. To render their respective plants available, both parties must have a return electric current, and both use the earth for that purpose. The plaintiff grounds its wires upon private property and, in many cases, connects them with the gas and water pipes and, in this way, establishes and completes its required circuit.

It is immaterial whether its wires are grounded upon its own property or that of others, who permit the plaintiff to so use their premises. Its possession as a licensee would be lawful while the license continues. The defendant allows the electric current used for the movement of its cars to escape or discharge, at least in part, directly from the rails into the ground, from whence it spreads or flows, by reason of the conductivity of the earth, upon plaintiff's grounded wires, and the most serious loss which the plaintiff sustains results from this cause, which is scientifically known as conduction. The defendant insists that it has an equal right with plaintiff to make use of this property, or law of nature, in the conduct of its business, just as all are entitled to the common use of the air and the light of the heavens, which, in a certain sense, is undoubtedly true. But the defendant does something more. It does not leave the natural forces of matter free to act unaffected by any interference on its part. It generates and accumulates electricity in large and turbulent quantities, and then allows it to escape upon the premises occupied by the plaintiff to its damage.

We are not prepared to hold that a person even in the prosecution of a lawful trade or business, upon his own land, can gather there by artificial means a natural element like electricity, and discharge it in such a volume that, owing to the conductive properties of the earth, it will be conveyed upon the grounds of his neighbor with such force and to such an

extent as to break up his business, or impair the value of his property, and not be held responsible for the resulting injury. The possibilities of the manifold industrial and commercial uses to which electricity may eventually be adapted and which are even now foreshadowed by the achievements of science, are so great as to lead us to hesitate before declaring an exemption from liability in such a case. It is difficult to see how responsibility is diminished or avoided, because the actor is aided in the accomplishment of the result by a natural law. It is not the operation of the law to which the plaintiff objects, but the projection upon its premises by unnatural and artificial causes of an electric current in such a manner and with such intensity as to materially injure its property. It cannot be questioned that one has the right to accumulate water upon his own real property and use it for a motive power; but he cannot discharge it there in such quantities that, by the action of physical forces, it will inundate his neighbor's lands and destroy his property, and shield himself from liability by the plea that it was not his act, but an inexorable law of nature that caused the damage. Except where the franchise is to be exercised for the benefit of the public the corporate character of the aggressor can make no difference. The legislative authority is required to enable it to do business in its corporate form, but such authority carries with it no lawful right to do an act which would be a trespass, if done by a private person conducting a like business. If either collects for pleasure or profit the subtle and imperceptible electric fluid, there would seem to be no great hardship in imposing upon it, or him, the same duty which is exacted of the owner of the accumulated water power; that of providing an artificial conduit for the artificial product, if necessary to prevent injury to others.

But the record before us does not require a determination of the question in this form. The use which the plaintiff is making of its grounded wires, is a part of its system of telephonic communication through the public streets, and a necessary component of the service it maintains there under the permission of the state and is subject to the condition

that it shall not incommode the use of the streets by the public. It is one indivisible franchise and is in its entirety subservient to the lawful uses which may be made of these thoroughfares for public travel. In this respect no distinction can be made between the injuries resulting from induction and conduction.

In the disposition of this appeal there has been no occasion to make any application of the rule that where a public use authorized by law takes no property of the individual, but merely affects him by proximity, the necessary interference in his business or in the enjoyment of his property occasioned by such use furnishes no basis for damages. (*Radcliff Exrs.* v. *Mayor*, 4 N. Y. 195; *Bellinger* v. *N. Y. C. R. R.*, 23 id. 42; *Mayor* v. *N. Y. C. & H. R. R. R.*, 88 id. 351; *Uline* v. *N. Y. C. & H. R. R. R.*, 101 Id. 98; *Am. Bk. Note Co.* v. *N. Y. E. R. R. Co.*, 129 id. 252.) Under such a rule it would be a grave question whether the injuries to which the plaintiff was subjected would not, if made permanent, constitute a servitude upon its property which could not be imposed without compensation, provided the parties were occupying the streets upon an equal footing. As was said by Judge ANDREWS in *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (103 N. Y. 14): " It is, in many cases, difficult to draw the line and to determine whether a particular use is consistent with the duties and burdens arising from vicinage, or whether it inflicts an injury for which the law affords a remedy."

We are spared the task of discrimination in this case by reason of the legal attitude which the plaintiff has assumed in its occupation of the streets. It has accorded to the public, by the manner in which it has elected to use its franchise, the unrestricted right of passage, and it cannot question the form in which such right shall be enjoyed so long as it is of lawful origin and is utilized with proper care and skill. The defendant's mode of conveyance of passengers is of this character, and the plaintiff can no more justly complain of its loss from this source than it could if, by the jarring of loaded vehicles passing up and down Broadway, its delicate and sensitive

instruments were displaced and their beneficial use impaired or destroyed.

There is also an appeal by the defendant from· an order denying a motion for an extra allowance of costs. The decision of the court below was placed upon the ground of a want of power, and the special reason assigned was "that the action being to restrain the defendant from employing a particular system only, and over a part only of the road, the franchise was not involved, and there is, therefore, no basis on which an allowance can be estimated."

In denying the motion for this sole cause we think the Supreme Court erred. The subject-matter of the controversy litigated was the right of the defendant to use the single-trolley system in the operation of its road upon Broadway and South Ferry street, and the prayer for relief in the complaint is that an injunction issue "restraining the defendant from operating its said railroad through the city of Albany by the electric system herein described." If the right thus sought to be perpetually enjoined has a money value, and there was any evidence in the moving papers tending to establish such value, the court had jurisdiction to entertain the motion, and it was its duty to exercise its discretion and dispose of the application upon its merits. We have examined the record sufficiently to satisfy us that there was some proof of this character.

One witness testifies that the right of the defendant to run its cars by electric motors upon the single-trolley system in the city of Albany is worth to the company the sum of at least $300,000, and as against the double-trolley system, or any other known system, at least $76,000. We are not permitted to say how much this and other similar evidence may be worth. We are dealing exclusively with a question of power. Whether there shall be any allowance at all, or what the amount of it shall be, and how far the hardships of the plaintiff's situation shall affect the allowance, if at all, are questions primarily to be considered by the Special Term and can be safely intrusted to its determination. The authorities cited in the opinion of the General Term were all cases where no

evidence was presented as to the commercial value of the right or franchise in question, and the decision was that in the absence of such evidence it could not be presumed to have a particular value. The just inference from them is that if such proofs had been submitted the court might have considered them as the basis of an allowance. (*People* v. *Genesee Valley Can. R. R. Co.*, 95 N. Y. 666; *Conaughty* v. *Saratoga Bank*, 92 id. 401; *Heilman* v. *Lazarus*, 12 Abb. [N. C.] 19.)

The order of the General Term granting a new trial must be reversed and the judgment entered upon the report of the referee affirmed, with costs in all courts.

The order denying the motion for an additional allowance should be reversed, with costs, and the motion remitted to the Supreme Court to be there heard upon its merits.

All concur.

Orders reversed and judgment affirmed.