Summers, J.
The questions considered and upon which the cases are determined are whether a company, organized for the purpose of constructing and operating a street railroad,is authorized to carry freight,and whether a municipal corporation, in granting permission to construct the road upon its streets, may prescribe as one of the terms and conditions that the road shall not be used for the transportation of freight.
It is said, in argument, that a general street railway ordinance passed by the city in 1869 provides: “And no' road (meaning street railroad) shall be used for transportation of freight, but only for passengers and their ordinary baggage or packages in hand.” Upon demurrer, this fact can not in this manner be brought to the knowledge of the *493 court, but the relator is given the benefit of it by considering as its equivalent the allegation of the petition that the defendants have offended against the ordinances of the city by the transportation of freight. ,
There is no law prohibiting the transportation of freight on a street railway. The statutes (sections 2502, 2505, Revised Statutes) restricting the power of cities to grant the right to construct such roads upon its streets to the company that will carry passengers at the lowest rates of fare, and providing in case of extension that the fare shall not be increased, and similar statutes,do not limit such companies to the carrying of passengers. In 1861 (58 O. L. 66) an act was passed to provide for and regulate street railroad companies, and section 2 provided that such corporations should be authorized to construct and operate a street railway on the streets specified in its certificate,and to transport thereon passengers and their packages and baggage. Under this law, in the application of a familiar rule of interpretation, a street railway company would probably be held to be restricted to the carrying of passengers and their packages and baggage; but this law was repealed in 1869 (66 O. L. 285), when the municipal code was enacted, and thereafter, until 1894, the statutes were silent as to the powers of such corporations, and when the statutes are silent the powers of a corporation can be determined only by ascertaining the purpose of their creation.
“Where a corporation is authorized by a general grant to exercise a franchise or to carry on a business, and the grant contains no words either defining or limiting the powers which the corporation may exercise, it will take, by implication, all such powers as are reasonably necessary to enable it to accomplish the purpose of its creation. ” Halsey v. Rapid Transit St. Ry. Co., 47 N. J. Eq., 380.
A street railway is a railway laid in a street to facilitate its *494 use by the public. Nichols et al. v. Ann Arbor & Ypsilanti St. Ry. Co., 87 Mich. 361.
And “the dominant purpose for which streets in a municipality are dedicated and opened is to facilitate public travel and transportation,and in that view new and improved modes of conveyance by street railways are by law authorized to be constructed. ” Railway Co. v. Telegraph Association, 48 Ohio St., 390.
A railroad also is used for the transportation of persons and freight, and yet a “railroad and a street railway are distinct and different things” (Mass. Loan & Trust Co. v. Hamilton, 88 Fed. Rep. 588; Louisville & Portland R. R. Co. v. Louisville City Ry. Co. 2 Duv. 175); but the distinction is not that one is for the transportation of both persons and freight and (he other for the carrying of passengers only. There is no inherent distinction in this respect.
“The author regards the appropriation under legislative authority of a reasonable portion of a street for a horse railway, constructed on the graduated surface of the street, and used under municipal regulation in the ordinary mode, to be such a use as falls within the purposes for which the streets are dedicated or acquired under the power of eminent domain, When thus authorized, and so regulated by the public authorities as not to destroy the ordinary and usual street uses, this is a public use within the fair scope of the intention of the proprietor when he dedicates the street or is paid for property to be used as a street. Such proprietor must be taken to contemplate all improved and more convenient modes of use which are reasonably consistent with the use of the street by ordinary vehicles, and in the usual modes. There is solid ground to distinguish between horse railways in streets as ordinarily laid and used, which do not exclude the public,and steam railways, which are generally so constructed as altogether to exclude a portion of the street from public use in the accustomed methods; and there is much to recommend as sound the view that wher« property is dedicated to the public for a street, the *495 dedicator must be presumed to intend that it may be used as a street in such a way as the legislature representing the public, and best acquainted with the public needs, may authorize, the limitations being that such use must not deprive the abutter of his property rights and easements in the street, or destroy the ordinary uses of the street as a public and common highway open to all”
Dillon’s Mun. Cor, (4th ed.) section 722. Cooley’s Coast.Lim. (5th ed.) 676-687. Booth’s Street Ry. Law, aection 82, Elliott on Road and Streets, 528, 558. Lewis on Eminent Domain, section 124. Cincinnati etc. Ry. Co. v. Cumminsville, 14 Ohio St., 523.
That such is now the law, established by the overwhelming weight of authority, will appear from the cases cited in ■the above authorities. See also Chicago, etc., Ry. Co. v. Street Ry. Co. 139 Ind., 297, 47 Am. St., 264 and note; Sells v. Col. St. Ry. Co., 28 W. L. B., 172; Pelton v. East Cleve. R. R. Co., 22 W. L. B., 67.
It is decided also that the distinction consists in their use, and not in their motive power (Mass. Loan & Trust Co. v. Hamilton, 88 Fed.Rep. 588), and that no new servitude is imposed by substituting electricity for horses as a motive power (H. R. T. Co. v. W. T. and R. Co. 135 N. Y. 393; Taggart v. Newport St. Ry. Co. 16 R. I., 668), nor by the substitution of cables (Matter of Petition of T. A. R. R. Co. 121 N. Y., 536; Harrison v. Mt. Auburn Cable Ry. Co., 17 W. L. B., 265; Clement v. City of Cincinnati, 16 W. L. B., 355, nor by the substitution of steam motors (Briggs v. Lewiston, 79 Me. 363; Williams v. City Electric St. Ry. Co., 41 Fed. Rep. 556; Newell v. Minneapolis L. and M. Ry. Co., 35 Minn. 112) nor by placing the .poles in the middle of the street for the purpose of using electricity for street-car propulsion (Halsey v. Rapid Transit St. Ry. Co., 47 N. J. 380; Nichols et al. v. Ann Arbor and Ypsilanti St. Ry. Co., 87 Mich. 361), nor even by the *496 erection of an elevated street railroad (Doane v. Lake St. Elec. Ry. 165 Ill. 510; 56 Am. St., 265).
The distinction between the two kinds of railways is in the manner of construction and in the mode of operation. The track of the steam road in a street is generally so laid as to exclude vehicles from passing along it and from crossing except at places specially provided, and in, its operation the running of the trains drives traffic from the streets and tends to destroy the use for which the street was acquired, while a street railway is so constructed and operated as not to destroy, but to facilitate the use of the street.
And if the reason street railway companies did not carry freight was not because the law or the purposes of their creation precluded them from doing so, but because the state of the art was such that they were not able to serve the public in that way,then it is no reason that they should not do so now, for a street railway company is not limited to the methods of operating its road known and in actual use at the time of the passage of the act authorizing it to construct and operate its road. (H. R. T. Co. v. W. T. & R. Co., 135 N. Y., 393; Easton, S. E. & W. E. P. R. Co. v. Easton, 133 Pa. St., 505.) And if its existence in the street was justified on the ground that it facilitated the use of the street in the carrying of passengers, it is doubly so now, that, by its enlarged field and improved methods of operation, it serves the public by the transportation of both freight and passengers.
So far the question has been considered as the statutes existed prior to 1894. In that year a law was passed (91 O. L. 285), entitled “An act to authorize and regulate electric railways,” which seems to recognize, if not expressly to confer, the authority on a street railway to carry freight. The first section authorizes electric street railway companies to construct and operate such a railway upon the highways outside of municipalities for the transportation *497 of passengers, packages, express matter, United States mail and baggage and freight; section 6 provides that they shall have, in so far as applicable, all the powers and be subject to the regulations of other street railroad companies; and ■section 4 is as follows:
“Such compauies shall have power to lease, purchase or make traffic arrangements with any ether street railroad company as to so much of its tracks and other property as may be necessary or desirable to enable them to enter or pass through any city or village, upon the same terms and conditions applicable to other street railroads. And any existing street railroad company owning or operating a street railroad shall receive the cars, freight, packages or passengers of any other road, upon the same terms and conditions as they carry for the general public.” (910. L. 286.)
Four days later, May 21, 1894, (91 O. L. 379), section 2505 of the Revised Statutes was supplemented by the enactment of section 2505c, which provides that a .company organized for the purpose of constructing a railroad to be operated by electricity from one municipality to another shall have authority to make an agreement with any street railway company “whereby the passenger cars of such railway company may be run over the tracks of such street railway company, and that it shall not be necessary for it to obtain any additional grant, franchise or right in case it uses in any such municipality only the tracks of such street railway company.” It is not necessary, in the determination of the questions considered in this case, to ascertain the precise scope and meaning of these two laws; they do not necessarily conflict, and it may be that the latter was intended to be, as it is in terms, applicable to a commercial electric railway only, and not to a street railway, and in that case very properly provided for tbe transportation of the passenger cars only of a commercial electric railway on the tracks of a street railway.
*498 The contention that the transportation of freight is limited to electric roads outside of municipalities does not seem to be supported by the law of 1894 (91 O. L. 285), fair whether section one be construed merely to give the right to construct the road upon the highways outside of municipalities.or to give such right and also to define the purpose for which it may be used, still it does not apply to street railways in a municipality, and section 3ix imports that in the legislative mind existing street railway companies had the right to carry freight, for it provides that such companies shall receive the cars, freight, packages or passengers of any other read upon the same terms and conditions as they carry for the general public; and further authorizes the electric railway company to lease or arrange with the street railway company for the use of so much of its track as may be desirable to enable it to enter or pass through any city or village upon the same terms and conditions applicable to other street railways,
The Cincinnati and Miami Valley Traction Company was incorporated for the purpose of constructing and operating an electric street railway upon the highways as well as upon the streets, and ha3 therefore not only express power by its charter to carry freight, but also under this law exprese power to lease the railway of the Dayton Traction Company and to use it upon the same terms and conditions applicable to other street railroads.
This brings us to the question ef the validity of the provision of the ordinance prohibiting the carrying of freight.
It is contended, however, that an ordinance granting permission to construct a street railway is a contract (Street Ry. Co. v. Smith, 29 Ohio St, 306; C. & S. Ry. Co. v. Village of Carthage, 36 Ohio St., 631; City of Columbus v. Street Railroad Co. 45 Ohio St., 98); that quo warrant© is not the remedy for enforcing a contract (State ex rel. v. Railroad Co. 50 Ohio St., 239), and further that a special *499 remedy is provided by section 1777, which makes it the duty of the city solicitor, whenever an obligation or contract made on behalf of the corporation granting a right or easement is being evaded or violated, to apply for the forfeiture or the specific performance of the same.
It is true that such an ordinance is in some respects a contract, and so is a franchise. And in some stateB it is held that the right acquired by ordinance to construct a street railway is merely a license or easement, and that quo warranto is not the proper remedy to enforce the ordinance. (Maybury v. Mutual Gas Light Co. 38 Mich. 154; C. C.R. W. Co. v. The People ex rel. 73 Ill. 541; Met. City Ry. Co. v. Chi. W. D. Ry. Co., 87 Ill., 317; G. C. Ry. Co. v. G. C. S. Ry. Co., 62 Tex. 529; Atchison St. Ry. Co. v. Nave, 38 Kan. 744.) But the better considered cases hold that the permission given by ordinance to construct a street railway in the street is a franchise granted by the state through the agency of the municipality, and that a violation of the same may be inquired into in quo warranto. Wright v. Milwaukee Electric Ry. etc. Co., 95 Wis. 29; State ex rel. v. Madison St. R. R. Co., 72 Wis. 612; Port of Mobile v. Louisville and N. R. Co. 84 Ala. 119; State of Mo. ex rel. v. East Fifth St. Ry. Co., 41 S. W. Rep. 955,and cases cited in the opinion.
However, it is provided by section 6761, Revised Statutes, that such an action may be brought against a corporation when it has misused a franchise,privilege or right conferred upon it by law, or when it claims or holds by contract or otherwise, or has exercised a franchise, privilege or right in contravention of law,and this seems broad enough to authorize this action, whether the grant is a franchise or merely a license, if the provisions of the ordinance prohibiting the carrying of freight are valid.
If the conclusion that the right to carry freight, in the *500 absence of legislative restriction, is one of the corporate powers of a company organized under the general laws to operate a street railway is sound, then it is manifest that a municipal corporation can not require the surrender of this corporate power as a condition of its consent to the construction of the road in its streets, nor prevent its exercise by the regulations it adopts for the operation of the road. The city has only delegated power; it acts only as the agent of the state, and can not act in regard to matters which the principal has determined. It can not confer corporate power (Sims v. Street Ry. Co., 37 Ohio St., 556), nor withdraw it. It may refuse its consent, but if it consents it can not impose condition inconsistent with rights granted by the state.
It is held by some of the courts that the city may impose any terms or conditions that it sees fit, and that the company will be bound by them, on the ground that it can not accept the benefits and at the same time reject the burdens. See Galveston & West. Ry. Co. v. Galveston, — — Tex.——, 36 L. R. A., 1, which supports our conclusion, and in which and in the note the cases are reviewed.
In this case Brown, J, well says, in reviewing Northern C. R. Co. v. Baltimore, 21 Md., 93, “After deciding the case correctly under the charter powers of the city and the statute referred to, the court, in support of its decision, quotes from Mager v. Grima, 49 U. S., 8 How., 490, 12 L. Ed., 1168, the following language of Chief Justice Taney: ‘If a state may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy. ’ Judge Taney was speaking of a body clothed with all legislative power that belongs to a republican form of government, while the court of Marlyand applied the language used by him to a body which had only such power and authority as were granted to it by its chart *501 er. The quotation has no application to the case, and the decision was not based upon it; but Judge Dillon,in the case of Pacific R. Co. v. Leavenworth, used much the same language as that quoted from Northern C. R. Co. v. Baltimore, citing that case as authority. Other courts and text writers have cited Judge Dillon in support of that proposition expressed in the language of Judge Taney, and thus a doctrine which originated in the misapplication of a correct rule of law is maintained as a basis for the solution of questions like that presented in this case, notwithstanding it is directly antagonistic to the fundamental doctrine that a municipal corporation has no power except that which is conferred by its charter. ” See also Allen v. Mayor, etc., of Jersey City (N. J.,) 22 At. R., 257; Matter of K. C. Ele. R. R. Co., 105 N. Y., 97.
F. S. Monnett, Attorney General, and H. R. Probasco, Attorneys for the State.
McMahon & McMahon, Attorneys for Defendants.
Booth on Street Railways, sec. 13, gives examples of many conditions and regulations that have been ordained, and none of them appears to conflict with corporate powers.
It follows that the facts stated in the petition do not constitute a cause of action.
The motions are therefore overruled, the demurrers to the answers overruled as to the answers and sustained to the petitions, and the petitions are dismissed.