**CITY OF SAN ANTONIO, Appellant,**

**v.**

**UNITED GAS PIPE LINE COMPANY, Appellee.**

**No. 14340.**

Court of Civil Appeals of Texas.

San Antonio.

Feb. 3, 1965.

Rehearing Denied March 3, 1965.

Samuel S. Wolf, City Atty., Crawford B. Reeder, Asst. City Atty., San Antonio, for appellant.

Carl Wright Johnson, William R. Simcock, San Antonio, for appellee.

MURRAY, Chief Justice.

This is an injunction suit brought by the City of San Antonio against United Gas Pipe Line Company, to enjoin it from using a highway and two public streets of the City of San Antonio for its gas pipe line without a franchise from the City. United Gas answered, stating that it had a license from Southern Pacific Railroad Company to construct its pipe line along the railroad right-of-way, that the city streets constituted only easements across this right-of-way, that the pipe line had been tunneled under the city streets, that cities have no power with respect to such subsurface installations, and that the statutes, charter and ordinances granting the City the right to control its streets are unconstitutional.

The trial was before the court without the intervention of a jury. Both injunctions, temporary and permanent, were denied, and the City has prosecuted this appeal. We have concluded that the trial court erred in refusing the injunction, and therefore the judgment must be reversed and judgment here rendered granting the writ of injunction as prayed for by the City.

San Antonio is a home rule city and has been given exclusive control of its streets and alleys. The highway and two streets under which United Gas had tunneled its pipe line were City of San Antonio streets, and regardless of who owned the fee simple title under such streets the City had the exclusive control thereof.

In 12 McQuillin, Municipal Corporations, § 34.14, we find the following statement:

"In determining whether a municipality has the power to grant to a public utility company the right to use a street or streets, it is wholly immaterial whether the municipality owns the fee in the soil over which the streets are laid out, or only an easement; * * *."

The City based its right to control its streets on §§ 16 and 12 of Art. 1175, Art. 1436b, and Art. 6021, Vernon's Ann.Civ. Stats., all of which grant to the City exclusive power to consent to the use by a utility company of public streets within its corporate limits. All powers conferred by these statutes have been adopted by the

charter and ordinances of the City of San Antonio.

 We fully agree with the following statement contained in appellant's brief:

"The power to control its streets granted to the City by the statutes has been held to include the power to prohibit subsurface installation of utility services, even where the surface of the street is left completely intact. In West Texas Utilities Company v. City of Baird, 286 S.W.2d 185 (Eastland Civ.App., 1956, writ ref. n. r. e.), the Court upheld the permanent injunction requiring the removal of the subsurface electric lines, holding that 'the construction and maintenance of distribution lines by tunneling under the street is a use of the street as contemplated in the statutes under which incorporated cities derive their power and control over streets and alleys.'

"The Courts have also held that a city's powers and the public's rights with respect to streets extend to railroad crossings the fee simple title to which is owned by the railroad, even where the street has never been formally dedicated and the railroad has maintained the street within the right-of-way area. City of Dublin v. Barrett, 242 S.W. 535 (San Antonio Civ.App., 1922, writ dis.).

"The authorities also are clear that a city's police power over its streets extends to street crossings within railroad right-of-way, even where the right-of-way was acquired before the city street came into existence. Houston & T. C. Ry. v. Dallas [98 Tex. 396], 84 S.W. 648 (1905); City of Beaumont v. Priddie, 65 S.W.2d 434 (Austin Civ.App., 1933, reversed on other grounds [Texas & N. O. R. Co. v. Priddie, Tex.Com.App.,] 95 S.W.2d 1290).

"These statutes and these three lines of cases fully uphold the power of the City of San Antonio to control the use of its streets whether they are downtown thoroughfares or railroad crossings, whether the fee ownership under the street is in an adjoining landowner or in the railroad, whether the desired use is to operate a bus system on the street or to install utility lines under the street, and whether the railroad or the street was there first. The City's power to control the streets necessarily involves the authority to prohibit the utility's use of the streets entirely if the judgment of the City Council dictates it and certainly the duty to do so if the utility has no franchise.

"United Gas admits that it has no franchise from the City of San Antonio, but contends that a franchise is unnecessary because (a) it has a permit from the Southern Pacific Company to lay the pipeline along the railroad's right-of-way and the City has only an easement for the use of the surface at crossings along the right-of-way; (b) the pipeline was laid under the surface of Shane Road, Graf Street and Interstate Highway 410, and (c) if the first two reasons are wrong, the statutes, charter and ordinances granting the City the right to control the streets are unconstitutional for a variety of evils, including the deprivation of property rights, indefiniteness, arbitrariness, absence of standards or guides, and denial of equal protection of the law. It should be noted that reasons (b) and (c) are attacks upon the City's power to control all of its streets, not just those crossing railroad rights-of-way."

██ Texas courts have consistently held that, regardless of fee ownership, where a utility company desires to install a pipe line, even by tunneling under a city street, a franchise from the city is necessary. Hooks Telephone Co. v. Town of Leary, Tex.Civ.App., 352 S.W.2d 755; Davis v.

State, Tex.Civ.App., 298 S.W.2d 219; West Texas Utility Co. v. City of Baird, Tex.Civ. App., 286 S.W.2d 185; 39 Tex.Jur. § 8, p. 518.

■ Appellee contends that the factual situation in the City of Baird case and the one at bar is different. We fail to see any material difference. We can see no distinction between the abutting property owners, who own the fee title to the street, giving a utility company, that does not have a city franchise, authority to tunnel under the street, and a railroad company that owns the fee underlying a street, giving a utility company authority to tunnel under such street.

■ Appellee further contends that the statutes, charter provisions and City ordinances cited here are illegal, unconstitutional and void, insofar as they would give a city's governing body unlimited control over public streets and require consent of such governing body to the use of public streets without establishing any guide or standard for the giving or withholding of such consent. We do not agree. The cases cited by appellee in support of this contention are not in point. None of them relates to a city's right to give or deny a utility company the right to use the city's public streets to carry on its utility business.

■ We are impressed by what is said in State ex rel. Spokane & B. C. Telephone & Telegraph Co. v. City of Spokane, 24 Wash. 53, 63 P. 1116 (Supreme Ct. of Washington), as follows:

"* * * The volition to consent or refuse is one of the powers vested by the legislature in cities of the first class, and this continuing power cannot be devested without the sanction of the legislature. The legislature, within constitutional limitations, has sovereign control of the streets and highways of the state and the cities. The primary purpose for which highways and streets are established and maintained is for the convenience of public travel. The use of such highways and streets for water mains, gas pipes, telephone and telegraph lines is secondary and subordinate to the primary use for travel, and such secondary use is permissible only when not inconsistent with the primary object of the establishment of such ways. Cincinnati Inclined-Plane Ry. Co. v. City & Suburban Tel. Ass'n. [48 Ohio St. 310,] (Ohio) 27 N.E. 890, [12 L.R. A. 534]; Hudson River Tel. Co. v. Watervliet Turnpike & R. Co., [135 N.Y. 393] (N.Y.) 32 N.E. 148, [17 L. R.A. 674]; Halsey v. [Rapid Transit St.] Railway Co. [47 N.J.Eq. 380] (N. J.Ch.) 20 Atl. 859. It would seem that, within the fundamental limitations mentioned, the legislative control of ways and streets for the secondary use is absolute, and that the legislative discretion in this regard is not subject to judicial intervention. That the legislature may delegate to municipalities such powers and act through their instrumentality is unquestioned. 2 Dill. Mun.Corp. (3d Ed.) §§ 705, 724."

We feel that West Texas Utilities Co. v. City of Baird, supra, is on all fours with the case at bar and settles all questions here raised against appellee.

The judgment of the trial court is reversed and judgment here rendered granting to the City a writ of injunction as prayed for.