[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 328 
The right of eminent domain which sanctions the taking of private property for public use, upon making compensation for the same to the owner thereof, is well settled, and the principal question to be determined in this case is, whether, within this principle, a public necessity is established by the evidence, which authorizes the acquisition by the petitioner of the premises of the appellant. To make out a case within the statute under which this proceeding is instituted (S.L. 1869, chap. 237, § 1), the land, the acquisition of which is sought, must be "for purposes of the incorporation, or for the purpose of running or operating the road" of the petitioner. What may be required in the exercise of this power, has been defined by this court in several cases. In re N.Y. and H.R.R. Co. v. Kip
(46 N.Y., 546), it was held that the only limit to the grant of power sought to be exercised under the act, is the reasonable necessity of the corporation in the discharge of its duty to the public. See, also, In re B. and A.R.R. Co. (53 N.Y., 574), where this principle was indorsed, and it was stated that there must not be an evident and apparent absence of all occasion *Page 331 
or necessity for the property, for the legitimate purposes of the corporation.
In the case first cited, ALLEN, J., after stating that the right to take land for some purposes, which are named, is not included in the grants, proceeds to say, that, "passenger depots, convenient and proper places for the storing and keeping of cars and locomotives not in use, * * * for the receipt and delivery of freight, and for the safe and secure keeping of property between the time of its receipt and dispatch, or after its arrival and discharge and before its removal by the owner or consignee, are among the acknowledged necessities for the running and operating of the railroad to the proper prosecution of the business in the interests of the public. They may be regarded as indispensable to the accomplishment of the general purposes of the corporation, and the design of the legislative grant." The rule here laid down furnishes a broad field for the exercise of the power which the statute confers, and if it appears that the acquisition of the property is demanded for the legitimate purposes of the corporation, a case is established within the authorities cited. To a large extent the company is to determine, under the delegation of power to it by the State, the extent of its wants, and to fix upon the location of lands, subject to the qualification, that the purposes for which the land is to be taken are strictly within its charter. Where a reasonable necessity is shown, a reasonable discretion must be exercised, and the courts will not interfere to control that discretion, unless it will result in great injury or is influenced by some improper motive. (See authorities cited supra.) The testimony taken before the referee in this case presents a state of facts which establishes that the petitioner has not facilities sufficient for the delivery of grain and live stock, which are transported on their railroad, at its termination in the city of New York. That increasing business demands more extensive accommodations, by adding to its real estate, and with its existing property there is a want of facilities to meet the demands of the public, and to transact its business with expedition, and a due and proper regard to *Page 332 
the public interests. Its real estate is limited, and, what it now owns, which is not fully occupied, is utterly inadequate for the purposes named. It requires still more, and cannot discharge, properly, the freight which accumulates on its hands, for the want of land to lay down the necessary tracks, and other improvements which are required, and the property which it seeks to acquire will not be more than adequate for that purpose. The land of the appellant is already crossed by some five tracks, and the tract of land, to obtain which this application was made, lies adjoining these tracks, and is essential for the purpose of laying other tracks, to enable the railroad company to reach their stock yards and river front, and to render them advantageous and convenient. Without this land, no other convenient or easy access can be procured to the property, and, as a consequence, trains must be broken up and divided, delays caused, and obstructions created, which are injurious both to the business of the petitioner and the public, and may be the occasion of dangerous collisions and accidents.
Upon the facts presented, there appears to be no serious question that the acquiring of the land of the appellant is necessary and proper, and clearly within the meaning and purpose of the statute. It appears that a real necessity, which is the foundation of the right, exists, and that large interests are involved, and require the additional facilities which thereby will be furnished. It is not difficult to see that in so great a business center as the city of New York, where concentrates the internal commerce of the whole country, that large depots for freight, cattle and live stock, which are transported, are absolutely essential, and quite as much, perhaps even more, within the object of the act, and quite as necessary for the successful operation of the railroad and its business as any accommodations which may be required or furnished for passengers or for any other portion of the traffic of the corporation. The application of the petitioner does not ask for the acquisition of land for purposes beyond the legitimate requirements of trade and business, as already stated; and although *Page 333 
it is claimed that the design of the proposed acquisition, in addition to these, is also for collateral enterprises, and, among others, for the benefit of stock yards, elevators, and an abbattoir to meet the requirements of this class of business to be carried on in connection therewith by other persons outside of the company, this evidently is not the main purpose of the application. All of these may follow as a consequence, and result, and some if not all of them may be very properly connected with the terminus of a great railroad corporation; but no land is required of the appellant to be taken for any such purpose, and therefore it is not necessary to determine whether such a purpose would be legitimate, or what effect such a use of the property might have upon this application. It is sufficient that the land is required for the construction of proper tracks and curves to enable trains of the petitioner's railroad, with convenience and proper dispatch and without danger, to approach the station, cattle yards, depot, elevator and other structures upon their water front, and to render these important auxiliaries effective, useful, and advantageous for the shipment and discharge of freight. Nor does it constitute any valid objection to the proposed improvement, or render it any less a public necessity, because, perchance, it might confer benefits and advantages upon business arising from structures which are really essential to the successful operation of a railroad enterprise, but which of themselves would not authorize the appropriation of land to insure their construction within the rules applicable to the exercise of the right of eminent domain. The case presented bears no analogy in any respect to that of In re The Rensselaerand Saratoga R.R. Co. v. Davis (43 N.Y., 137), where the court held that the acquisition of lands for the purpose of speculation or sale, to prevent interference by competing lines or methods of transportation, or in aid of collateral enterprises, were not such purposes as authorize the condemnation of lands.
Sufficient appears to establish a case within the statute and the authorities referred to, and there is no valid objection presented which prevents the appropriation of the land of a *Page 334 
corporate body for railroad purposes under the right of eminent domain, upon the same principle that private property is condemned and taken. It is not proposed to invade the franchise of the appellant, and the right to its land stands upon the same footing as the right to the real estate of individuals. While chartered rights are sacred and should be carefully guarded and protected in the administration of the law, there is no principle which demands that the real estate of private corporations shall be exempt from the ordinary rules which require the appropriation of lands for the public use. It is held that the legislature, under the power of eminent domain, can take the franchises of a corporation for public use upon making compensation. And no exemption arises from the fact of the ownership and use of property by a corporate body. (See Matter of Kerr, 42 Barb., 119; Backus v. Lebanon, 11 New Hamp., 19; West River BridgeCompany v. Dix, 6 How. [U.S.], 507; The Bellona Co. Cas., 3 Bland. Ch. [Maryland], 442.) And there is no implied contract of the State which exempts the property of a corporation from the same liability to be taken for public use as the property of individuals. (White River Turnpike Co. v. Vert. C.R.R. Co.,21 Vt., 590; E.R.R. v. Boston and M.R.R., 111 Mass., 128.)
There is nothing in the charter of the appellant which entitles it to exemption from the power of eminent domain, as exercised under the statute, in acquiring real estate. Its land is not held by virtue of any such right; nor is it required to serve any public use which confers upon it any especial privilege in this respect. It is a private manufacturing corporation which furnishes gas to individuals and for the lighting of the public streets, on such terms as are agreed upon. This of itself does not make it a public corporation. It is not public merely because it is of a public character. (Ten Eyck v. The Delaware andRaritan R.R. Co., 3 Harr. [18 N.J.], 200; Tinsman v.Belvidere and D.R.R. Co., 2 Dutch. [N.J.], 148.) It is true that the court should, under the circumstances, be watchful in seeing that a necessity exists in interfering *Page 335 
with real estate in which the public have an interest, but where it is plain that a proper case is established, the power to take action for that object, as we have seen, is fully sustained by authority. The land in question is not now, and has not been, devoted to gas purposes by the company, and it is not clear that it is absolutely indispensable for their use at the present time. That it may become so hereafter does not necessarily deprive the petitioner of the right to acquire it if the public exigencies demand it. While very great injury and loss to the appellant's interest, or perhaps even great inconvenience might in some cases be a sufficient reason for denying an application like this, it is not so clear that the laying of the additional tracks required across the appellant's land is so utterly against its interests and destructive to its rights as to prevent the acquisition of such land for the purposes desired. It is to be assumed that, so far as practicable, proper protection will be furnished for crossing and obtaining access to and from the divided portion of the land of the appellant, either in the report of the commissioners or by the court, when said report shall be filed, and that full compensation will be meted out according to the statute, and as in other cases of a similar character. Some of the objections urged would prevent the acquisition of land almost entirely in large cities, for it is rare in such cases that obstacles quite as formidable do not exist to the assertion of the right of eminent domain. It is sufficient to say, in regard to many of them, that private interest must always yield to a public necessity.
The objection that no attempt was made by the railroad company to agree for the land required is without foundation, and does not require particular consideration.
After a careful examination of the points presented, we are satisfied that the order appointing commissioners was properly granted by the Special Term, and that the General Term were right in affirming the same.
Order affirmed, with costs.
All concur; except ALLEN, J., not voting.
Order affirmed. *Page 336