Dwight, J.
The issues joined in this proceeding by the peti tian and answer prescribed by the statute, were tried by the court at a special term for the trial of equity causes; proofs were taken orally, and findings of fact and conclusions of law were made by the court as basis of the order from which this appeal was taken. We regard the appeal as bringing up the whole record and presenting the questions, First, whether the findings of fact are warranted by the evidence; and, second, whether the conclusions of law are warranted by the findings of fact.
The use for which the petitioner seeks to acquire the lands in question is for the purposes of a train house and passenger station at the northern terminus of the Charlotte branch of its road. The final and controlling conclusion of the court at special term was that the land was not shown to be necessary for that purpose; and the conclusion is based upon previous findings to the effect that while such a structure as that proposed is greatly needed for the safe and convenient accommodation of the public, it does not appear but that it might be erected upon land, in the vicinity, already owned by the petitioner, and which is not at present used for the purposes of its incorporation.
Our inquiry, therefore, seems to be limited to the questions, what are the extent, the character, the situation and the present uses of the land referred to as already belonging to the petitioner; and whether that land, even if adequate and suitable for the purpose, ought to be made use of for the purpose contemplated by the application In making that inquiry we shall keep in mind that whatever land is selected for the purpose in question is to be devoted to a public use, and that a primary consideration in the selection is the best accommodation of the public.
It appears from the findings and proofs, and is also a matter of public knowledge, that the beach of Lake Ontario, at Charlotte, is not only the terminus of the petitioner’s branch road, but the attraction which draws vast numbers of people thither in the summer and autumn months, and itself creates the demand for passenger transportation which the petitioner’s road supplies. Thus the beach, as a summer resort, and the railroad as a means of reaching it, are largely dependent on each other; neither of them would be called upon to furnish large accommodation to the public but for the other; and the best accommodation of the public requires that neither of them shall be so used or managed as to interfere with the other, in the attempt to serve a common end.
All that portion of the beach at Charlotte which is open to the public is included in the comparatively small tract of land which *66 is 'owned by the petitioner, and upon which the respondent contends its train house and passenger station should be located. The portion of the beach spoken of terminates, on the east, at the mouth of the Grenesee river, and on the west at Broadway, the principal street of the village, beyond which, to the west, the shore of the-lake, whether beach or bluff, is in private hands. The tract belonging to the petitioner is bounded on the east by the Greneseeriver, on the north by the lake, on the west by Broadway and on the south by lands of the respondent It is a little less than 1,000-feet in width from east to west, being the length of the beach, and about 860 feet in depth, from the lake to its southern boundary. It is traversed, at about the distance of 560 feet from the lake, by another street of the village, called Beach street, leading from Broadway to a ferry across the Grenesee river.
The portion of the petitioner’s land which lies north of Beach street was leased by the petitioner in 1883, to certain persons, who-were afterwards incorporated under the name of “ The lake Ontario Beach Improvement Company,” for the term of fifty years, at a nominal rent, with the provision that the lease might be terminated by the petitioner on one year’s notice, and subject to the use of the petitioner for the operation of its railroad, and to the right of the petitioner to construct thereon such tracks and structures as may be necessary or convenient for such operation. The lease is now held by the corporation named. The lessees have erected on the grounds, and maintained for several years, various buildings, such as are usual at popular sea-side resorts for the accommodation and entertainment of the public, and have laid out the grounds in an ornamental manner. With these additions to the natural attractions of the place, the beach at Charlotte has become a great lake-side resort. Trains run to and fro, between Rochester and the beach, hourly, during the day and evening, in the season, carrying backward and forward, at times, as many as 15,000 people daily. The petitioner has at present no terminal facilities at all adequate for the convenient or safe accommodation of this immense travel. It has no train house and no passenger station which is of any use for the purpose, nor even platforms for passengers entering and leaving the cars. Its only means of accommodating its passengers, in this respect, is a “ balloon .track,” so called, which enters and leaves its own land at the south bounds of the parcel south of Beach street, and spreading out, encircles in its widest part nearly the whole of the parcel leased to the-Beach Improvement Co. Its trains stop at various points on this circular track to discharge and receive passengers in the open air. The inconvenience and dangers attendant upon this mode of dealing with great throngs of passengers, some alighting from and others attempting to enter the cars at the same time, are apparent, and the necessity of better accommodation for the public, in this respect, is conceded by all. Its proposed train house and passenger station are, together, 676 feet long, and the train house of a width sufficient to accommodate six trains of cars, side by side, 576 feet in length.
The court at special term finds that the structure so planned “ is *67 ample for all business of the petitioner at Charlotte; is adapted for the purpose and none too large.”
The court also finds, as the figures show, that the proposed structure cannot be located on the land owned by the petitioner north of Beach street, so as to stand parallel to Broadway (which would be in line with the direction of the track as it enters the premises), but that it does not appear that it cannot be put on said land diagonally with Broadway. And the court, from the facts in substance above stated, found, as a conclusion of law, that because the petitioner might so far as appears locate the necessary structure above described on its own land north of Beach street, it cannot condemn other land for that purpose.
We do not think that this conclusion of law was warranted by the facts. The beach at Charlotte and the land adjacent thereto, available for the accommodation and entertainment of the public visiting that resort, is already very limited in extent. A building of the dimensions required for the proposed train house and station, together with the necessary tracks for the entrance and exit of trains, if they could be located thereon, in any form, would cover the greater part of the entire parcel of land north of Beach street. And the unavoidable result would be to destroy, in large measure, the usefulness and attractions of the place as a public resort, and, to that extent, to render unnecessary the terminal facilities now sought to be provided for the accommodation of the public.
The question is not here whether the railroad company may acquire lands, by condemnation, for the purposes for which the land north of Beach street is now used; but whether, being the owners of that land, and having leased it for such purposes, they are required to resume possession of it, under the power reserved by the lease, and employ it for their own necessary structures, before they can condemn other land for the latter purpose.
Iú the case of Rensselaer & Sar. R. R. Co. v. Davis, 43 N. Y., 137, 146, it was held that while the construction of dwellings for employees and officers, and the construction of slips for the accommodation of vessels bringing freight to or taking it from the railroad, might not be necessary corporate purposes of a railroad company, within the statute, yet that the authority of the company to acquire, by voluntary purchase, lands for those purposes, was within the powers granted by the act; and in the case of the N. Y. C. & H. R. R. R. Co. v. Met. Gas-Light Co., 63 N. Y., 326, it was held no objection to an application to acquire lands required for the legitimate purposes of the petitioner’s incorporation, that portions of the petitioner’s premises were leased to others and were to be used for business purposes, which would be benefited by the appropriation, although those purposes of themselves would not authorize the condemnation of land under the statute.
We think the case in hand a very strong one for the application of the principle approved in the cases cited, viz., that a railroad company may take by voluntary purchase, or, .being the owners of, may lease to others, lands for uses not strictly within the purposes of its incorporation, when such uses contribute materially to *68 the business of the railroad company and to its ability to serve the public uses for which it was incorporated.
No objection is made or suggested here that the petitioner is acting oppressively or in bad faith in seeking to condemn the lands of the respondent for the use in question; nor that the appropriation of those lands cannot be fully compensated for in proceedings under the statute.
We think the order appealed from should be reversed and motion for appointment of commissioners granted.
So ordered, and proceedings remitted to special term of Monroe county to name such commissioners on the customary notice.
Barker, P. J., and Macomber, J., concur.