NORTHWESTERN TELEPHONE EXCHANGE COMPANY v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

May 22, 1899.

Nos. 11,593, 11,602—(87, 88).

### Domestic Corporation—Alien Stockholders—G. S. 1894, § 5876—Presumption.

Whether G. S. 1894, § 5876, which provides that no corporation or association, more than 20 per centum of the stock of which is or may be owned by any person or persons not citizens of the United States, shall hereafter acquire, or shall hold or own, any real estate hereafter acquired in this state, is applicable where a corporation is attempting to exercise the right of eminent domain, is not decided, but, if it is, it is *held* that, as to a corporation organized under the laws of the state, it must be presumed, until the contrary appears, that a sufficient percentage of its shareholders are citizens.

### Telephone is a Telegraph—Eminent Domain.

The rule is, when applying the principles of the common law or when construing statutes, that the telephone is to be considered a telegraph, unless express statutory provisions govern the case. So telephone companies, when establishing their lines, have the right of eminent domain, under the constitution and laws, to the same extent as have telegraph companies.

**Federal Statutes—Telegraph Lines upon Post Roads—Railroad Right of Way.**

The federal statute (R. S. [U. S.] §§ 5263, 5268, 5269) authorizing telegraph companies, upon complying with its terms, to construct and maintain their lines along and over all post roads of the United States, and (section 5964) making all railroads post roads, does not confer upon a telegraph company the right to occupy the right of way of a railroad with its line without its consent, or a contract with a prior owner which is binding upon it.

**Eminent Domain—Land Already Devoted to Public Use.**

The general rule is that land already devoted to another public use cannot be taken under general laws where the effect would be to extinguish a franchise. If, however, the taking would not materially injure the prior holder, the condemnation may be sustained.

**Same—G. S. 1894, § 2604—Necessity for Condemnation—Evidence.**

The plaintiff in these proceedings is authorized, under G. S. 1894, § 2604, to exercise the right of eminent domain. No express authority to condemn for its use land which has already been appropriated to another public use is found in the statute, and such authority must arise, if at all, by necessary implication. There must be a reasonable and practical necessity for such a proceeding, not a necessity created by the corporation asserting the right that it may be convenienced, or a necessity arising out of a desire to unreasonably economize. *Held*, upon the evidence in the case at bar, that there was no reasonable or practical necessity for the condemnation of an easement for plaintiff's line over and across certain portions of defendant's right of way.

Petitions in the district court for Martin and Jackson counties by Northwestern Telephone Exchange Company to condemn and acquire right of way for the erection of its lines of poles and wires over certain lands in said counties, including lands acquired by defendant railway company for its right of way. The petitions were heard together before Quinn, J., who found in favor of petitioner, and made an order in each case appointing commissioners to assess the compensation to be made to defendant. The proceedings having been conducted to a final determination, judgments were entered in favor of petitioner confirming its title to the right of way over the lands in question. From the orders appointing the commissioners, and also from the judgments, defendant appealed. Reversed.

*W. E. Todd* and *Lowden, Estabrook & Davis,* for appellant.

The facts alleged in the petition do not show that petitioner is entitled to acquire, or even to hold or own, real estate in Minnesota, nor does the testimony supply this omission. The petitioner should have alleged and proved that 80 per cent. of its stock was owned by citizens of the United States. G. S. 1894, § 5876. Petitioner must affirm every qualification entitling it to acquire real estate by whatever means. Fox v. Holcomb, 34 Mich. 298; In re Montgomery, 48 Fed. 899. A corporation has not the rights of a natural person. Even at common law an alien could only acquire property by act of the grantor and hold it till office found, and could not acquire it by operation of law. Phillips v. Moore, 100 U. S. 208, 212. Where a statute provides that an alien cannot acquire real estate, even the act of the grantor cannot give him title which he can hold till office found. Ryan v. Egan, 156 Ill. 224; Wunderle v. Wunderle, 144 Ill. 40. There is a distinction between an inhibition to hold property and an inhibition to acquire it. In the former case, by weight of authority, a corporation would take title till office found, and could transmit title. See, however, In re McGraw, 111 N. Y. 66; Wood v. Hammond, 16 R. I. 98. But the rule that the limitation of a corporation to receive and hold real estate concerns the state alone does not apply when a corporation as plaintiff seeks to acquire real estate which it is not by law authorized to acquire. Case v. Kelly, 133 U. S. 21. The ownership of its stock is peculiarly within the knowledge of petitioner. The same rule should apply as in the case of a right claimed by virtue of a license. 5 Thompson, Corp. § 5770. The right asserted is not legal without a license. State v. Schmail, 25 Minn. 370; State v. Bach, 36 Minn. 234. The statute is in the nature of a statute of mortmain. It empowers or licenses the acquiring of real estate only on conditions, which are, therefore, conditions precedent.

Petitioner is not a telegraph company within the act of congress of July 24, 1866. The act does not authorize a telegraph company accepting its provisions to enter on the right of way of a railroad company as a post road of the United States, without the consent of such railroad company. Boston v. Salem, 2 Gray, 1, 37; Payne v. Kansas & A. Val. R. Co., 46 Fed. 546. The occupancy of a rail-

road right of way by a telegraph company is the taking of private property.   Atlantic & P. Tel. Co. v. Chicago, R. I. & P. R. Co., 6 Biss. 158; Pensacola Tel. Co. v. Western U. Tel. Co., 96 U. S. 1.

The power of eminent domain delegated to petitioner under the laws of Minnesota does not authorize it to expropriate the right of way of defendant.   A general authority to expropriate property, though in terms covering all property and excepting none, does not refer to property previously dedicated to public use.   Lake Erie & W. R. Co. v. Board of Commrs., 57 Fed. 945; In re New York, 99 N. Y. 12, 23.   A subsequent grant cannot be construed to authorize the subversion of the former use, unless such appears by express words or necessary implication to be the legislative intent.   Little Miami v. City, 23 Oh. St. 510.   Authority to condemn defendant's right of way cannot be created by combining the state and federal statutes.   People v. Humphrey, 23 Mich. 471; Kohl v. U. S., 91 U. S. 367; Darlington v. U. S., 82 Pa. St. 382.

When the right of way of a railroad has been dedicated by the legislature to the use of the public out of the public domain, or condemned by the railroad company under authority given by the legislature limiting the amount of real estate to be taken, the court is without jurisdiction to expropriate any part of such right of way to a subsequent public use, on the ground that the whole of the right of way is not actually occupied by the railroad company or necessary for its immediate use.   The constitution does not create the power of eminent domain, but only limits its exercise.   The agency to which the power is delegated holds it in trust.   The legislature is the only custodian of the power, and it alone can delegate it and prescribe the purpose for its exercise and the machinery for its accomplishment.   The needs of the company having once been determined by the legislature, the question is no longer a question of fact, but a conclusive presumption of law.   The legislature having once devoted particular property to a particular public use, giving to its agency exclusive control and dominion over such property, only the legislature has the right to retake what it has given; and the inquiry of the court should be, not what is expedient, or convenient, or economical, or what ought to be, but what the legislature actually intends shall be.   Matter of New

York, 99 N. Y. 12; Pittsburgh v. Peet, 152 Pa. St. 488; Appeal of Pittsburgh, 122 Pa. St. 511, 530; In re St. Paul & N. P. R. Co., 37 Minn. 164; Fidelity T. & S. V. Co. v. Mobile St. Ry. Co., 53 Fed. 687; St. Paul U. D. Co. v. City of St. Paul, 30 Minn. 359; Housatonic v. Lee, 118 Mass. 391.

Public policy requires that a railroad company should have absolute and exclusive jurisdiction over every portion of its right of way. Lewis, Em. Dom. § 586; Mills, Em. Dom. §§ 208, 209; Randolph, Em. Dom. § 215; Lake Superior & Miss. R. Co. v. Greve, 17 Minn. 299 (322); St. Paul U. D. Co. v. City of St. Paul, supra; Milwaukee & St. P. R. Co. v. City of Faribault, 23 Minn. 167; Minneapolis W. Ry. Co. v. Minneapolis & St. L. Ry. Co., 61 Minn. 502; St. Onge v. Day, 11 Colo. 368; Presbrey v. Old Colony, 103 Mass. 1; Baltimore v. North, 103 Ind. 486; City v. Chicago, 123 Ind. 467; City v. Jeffersonville, 126 Ind. 466. The testimony reveals no paramount necessity for taking the property sought to be condemned.

*D. F. Morgan*, for respondent.

The petition is sufficient, since it states all the facts enumerated in G. S. 1894, § 2605. The proceeding is not to acquire land, but to acquire right of way on a right of way existing over lands the fee of which is in the state or private individuals. G. S. 1894, § 5787. Defendant as the owner of a mere easement is in no position to raise the question of the ownership of petitioner's stock. The term right of way expresses every interest held by defendant. Calcasieu v. Harris, 77 Tex. 18, 23. Defendant has an easement over the lands, which in this case is the dominant easement, and on which it is proposed to establish a servient easement in favor of petitioner. St. Louis v. Postal, 173 Ill. 508; Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 226, 248; Railroad v. Telegraph Co., 101 Tenn. 62; Lockie v. Mutual, 103 Ill. 401. The question cannot be raised collaterally. Baker v. Northwestern G. L. Co., 36 Minn. 185; In re New York, 70 N. Y. 327, 337; Taylor v. Holmes, 14 Fed. 498; Alexandria v. Alexandria, 75 Va. 780; Chicago v. Chicago, 112 Ill. 589; In re Long Island, 143 N. Y. 67; Cook, Corp. (4th Ed.) § 632; 4 Am. & Eng. Enc. 303. Not having been raised below, the question can-

not be raised on appeal. Upon its incorporation under title 1 of chapter 34, with power to construct telegraph and telephone lines, by force of the statute petitioner at once became empowered to acquire right of way for its lines by taking the steps pointed out in the statute. Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527. The petition having made out a case under title 1 and the federal statutes, it was for defendant to suggest by answer any disability which it might contend rested on petitioner. The allegations of the petition are found to be true, and the inference which arises from its being a domestic corporation is sufficient in the absence of a showing to the contrary to uphold the findings. Black's Dillon, Removal of Causes, § 97, note 2; Brunswick B. C. Co. v. Brackett, 37 Minn. 58; La Grange M. Co. v. Bennewitz, 28 Minn. 62; State of Wisconsin v. Torinus, 22 Minn. 272; Nevil v. Clifford, 55 Wis. 161.

Petitioner has the right of eminent domain conferred on it, not only as a telegraph and telephone company, but also as a work of internal improvement. The telephone is an improved telegraph. The word telegraph as used in the statute includes telephone. 25 Am. & Eng. Enc. 745; Croswell, Elec. § 13; Attorney General v. Edison, L. R. 6 Q. B. D. 244; Wisconsin v. City, 62 Wis. 32; State v. Central, 53 N. J. L. 341; Iowa v. Board, 67 Iowa, 250; Franklin v. Northwestern, 69 Iowa, 97; Bell v. Com., 2 Am. Elec. Cas. 407; Com. v. Telephone, 42 Legal Intel. 180; Roberts v. Wisconsin, 77 Wis. 589; Central v. Wilkes-Barre, 11 Pa. Co. R. 417; Cumberland Tel. & Tel. Co. v. United Electric Ry. Co., 42 Fed. 273; Chesapeake v. Baltimore, 66 Md. 399; Com. v. Pennsylvania, 42 Leg. Intel. 180; Hudson River v. Watervliet, 135 N. Y. 393; State v. Central, 53 N. J. L. 341; Telephone Cases, 126 U. S. 1; York v. Keesey, 6 Am. Elec. Cas. 107; Randolph, Em. Dom. § 113. But whether or not telegraph includes telephone, petitioner's right is clear; since the telephone is a "work of internal improvement," and under G. S. 1894, § 2604, a corporation organized for such purpose may obtain right of way. A telephone is a "work of internal improvement." Cater v. N. W. Tel. Exch. Co., 60 Minn. 539; Rippe v. Becker, 56 Minn. 100; Traver v. Board, 14 Neb. 327; Township of Burlington v. Beasley, 94 U. S. 310. Moreover, the doctrine of ejusdem generis

applies to the statute. The line is a telegraph line over which messages may be transmitted either by telegraph or telephone instruments.

The lands proposed to be taken are necessary for the purposes of the enterprise. The federal and state statutes, when read together, determine the necessity for taking. Backus v. Fort St. U. D. Co., 169 U. S. 557, 568. The court may determine whether the discretion vested in the corporation has been reasonably exercised, but cannot locate the line elsewhere. If the company should condemn more than necessary, the court could so determine. Weir v. St. Paul, S. & T. F. R. Co., 18 Minn. 139 (155); Buffalo v. Brainard, 9 N. Y. 100. Congress having determined the right to go on all post roads, this is a legislative determination of the necessity and propriety of taking this class of lands; but if it were otherwise, the necessity is established by the facts. Colorado E. Ry. Co. v. Union Pac. Ry. Co., 41 Fed. 293.

The general power conferred by G. S. 1894, § 2604, is sufficient, since the right of way taken will work no practical interference with the present use. See New York v. Metropolitan, 63 N. Y. 326. Under the grant of power, petitioner may acquire an easement in every case where it can be established without serious interference with the present public use. Southern v. Southern, 111 Cal. 221. A general grant of power to take lands for the public use in question is sufficient, for the reason that the uses may stand together, and any resulting inconvenience may be compensated for in damages. Mills, Em. Dom. §§ 45, 47; New York v. Metropolitan, supra; Morris v. Central, 31 N. J. L. 205; Randolph, Em. Dom. § 178; Suburban v. Mayor, 128 N. Y. 510; People v. Park, 76 Cal. 156; St. Paul U. D. Co. v. City of St. Paul, 30 Minn. 359; St. Paul, M. & M. Ry. Co. v. City of Minneapolis, 35 Minn. 141; Minneapolis W. Ry. Co. v. Minneapolis & St. L. Ry. Co., 61 Minn. 502; Winona v. City, 4 S. D. 323; Steele v. Empsom, 142 Ind. 397; Matter of Rochester Water Commrs., 66 N. Y. 413; St. Louis v. Belleville, 158 Ill. 390; Chicago v. Chicago, supra. A telegraph line may be established on the right of way of a railroad company, for the reason that there is no material interference with the use for railroad purposes. Lewis, Em. Dom. § 269; New Orleans v. Southern, 53 Ala. 211;

Western v. American, 65 Ga. 160; Gulf v. Southwestern, 18 Tex. Civ. App. 500; Matter of City of Buffalo, 68 N. Y. 167. A general power is sufficient to authorize such an appropriation as will not essentially injure or interfere with the public use to which the property is devoted. Boston v. Boston, 23 Pick. 360; Baltimore v. Pittsburg, 17 W. Va. 812; Philadelphia v. City, 9 Phila. 563. The rule applies to lands of a railroad company where the second appropriation will not prevent the company from exercising its franchises or discharging its duties to the public, as in the present case. North Carolina v. Carolina, 83 N. C. 489; New York v. Boston, 36 Conn. 196; Matter of New York, 99 N. Y. 12; Peoria v. Peoria, 66 Ill. 174; Baltimore v. North, 103 Ind. 486.

The acts of congress establishing all railroads as post roads and giving to telegraph companies the right to occupy the same with their lines applies in favor of petitioner. Croswell, Elec. § 41. No state legislation can prevent the occupation of post roads for telegraph purposes by such companies as avail themselves of the privileges of the act. Western U. T. Co. v: Attorney General, 125 U. S. 530; Pensacola T. Co. v. Western U. T. Co., 96 U. S. 1; American v. Pearce, 71 Md. 535; American v. Hess, 125 N. Y. 641; Western U. T. Co. v. Mayor of New York, 38 Fed. 552; Western v. Atlantic, 5 Nev. 86. The act grants a species of easement to those companies which accept its provisions, dependent on the consent of the owner of the land or condemnation thereof by such proceedings as the law may give, and subject to such reasonable police regulations as the state may enact. Croswell, Elec. §§ 43–47; Western U. T. Co. v. Mayor of New York, supra. The act applies equally to telephone companies. City of Richmond v. Southern Bell T. & T. Co., 85 Fed. 19, affirming Southern Bell T. & T. Co. v. City of Richmond, 78 Fed. 858; Croswell, Elec. § 52.

The federal and state statutes are to be read together, and confer express authority on petitioner to condemn this right of way. Western U. T. Co. v. American U. T. Co., 9 Biss. 72, 74; Postal v. Morgan, 49 La. An. 58; 23 Am. & Eng. Enc. 311, note 2. See 1 Thompson, Corp. § 672; Kohl v. U. S., 91 U. S. 367; U. S. v. Jones, 109 U. S. 513.

It is immaterial that the property sought to be condemned was

itself acquired under power of eminent domain. New York v. Boston, supra; Chicago v. Town, 71 Ill. 333; North Carolina v. Carolina, supra; Oregon v. Baily, 3 Ore. 164. Nor is it material that the land was purchased. St. Paul U. D. Co. v. City of St. Paul, supra. Nor is it material that the land was granted by the state. Boston v. Boston, supra; Boston v. Salem, 2 Gray, 1; Board v. Chicago, 14 Ill. 314. Nor are lands granted by congress to a corporation organized under its laws exempt from exercise of the power by authority of a state, at all events to a limited degree. Northern Pac. R. Co. v. St. Paul, M. & M. Ry. Co., 1 M'Crary, 302; Union Pac. Ry. Co. v. Burlington & M. R. Co., 1 M'Crary, 452.

COLLINS, J.[1]

In separate proceedings, instituted in two counties, plaintiff sought to condemn and acquire a right of way six feet in width for the erection and maintenance of its poles and lines of wire over and across certain lands in these counties, including a portion of the territory previously acquired by grant or by condemnation by defendant railway corporation for its right of way, and in use as such. The proceedings were had under and in accordance with G. S. 1894, §§ 2604–2615, and resulted in the appointment of commissioners, an appraisement and assessment of damages, the filing of the commissioners' report, a refusal by defendant to accept the amount of damages assessed, a deposit thereof, and an entry of judgment in each case as prayed for in the petitions. Defendant appeals from the judgments as well as from the orders appointing commissioners.

A determination of one case necessarily determines the other. From the plats and maps introduced in evidence and presented on the argument, and from other records in the cases, it seems that, as a general rule, the defendant's right of way through these counties is 100 feet in width, but at places, and for reasons not fully disclosed, it is 200, and in others 300, feet wide. But, without regard to width, the defendant's main line of railway is in the center of the right of way. So it will be seen that, while the distance from the center of the track to the margin of the way on either side

[1] BUCK, J., absent.

is 50 feet, ordinarily, there are places where it is 100 feet, and others where it is 150 feet. Where the defendant's right of way is but 100 feet wide, as a rule plaintiff has located its line and has acquired its strip of land adjoining on the south, just outside of defendant's way, setting its poles in the center,—that is, three feet from defendant's line,—so that in no manner does it interfere with such way. But at the places before mentioned, where defendant's right of way is of greater width than 100 feet, and, as a consequence, plaintiff's six-foot strips abut thereon, the latter has acquired the right, if these proceedings are upheld, to cross defendant's right of way from point to point, and thus to bisect it on a line parallel with defendant's railway track 50 feet from the center thereof. The length of these bisecting strips of six feet in width, of which plaintiff would have the use for the purpose of constructing and maintaining its poles and wires, vary, according to the plats on file, from one-fourth of a mile to one and one-fourth of a mile in length. In Martin county alone the defendant's right of way thus to be used amounts to eight miles in the aggregate. We have no means of ascertaining what it is in Jackson county. We call attention to these details because, as will be seen hereinafter, they are of importance in the disposition we make of the appeals from the judgments.

The plaintiff is a corporation organized, according to its articles, stated in a general way, for the purpose of organizing, maintaining, and operating telephone exchange systems, public and private telephones and telegraph lines, and doing a telephone and telegraph business within and without the state, incorporated under the provisions of G. S. 1894, c. 34, tit. 1. The petitions presented to the court below embodied the facts enumerated in section 2605.

The first point made by defendant's counsel is that the petitions are insufficient, and the proofs defective, because it was not affirmatively alleged and proven that 80 per centum, at least, of the corporate stock shares were and are owned by citizens of the United States. G. S. 1894, § 5876. Even if we should admit that condemnation proceedings are for the purpose of acquiring land, although they are brought to secure an easement therein only, there are several reasons why the point is not well taken. A sufficient

one is that when we find a corporation organized under the laws of this state, and with power to acquire land or an easement in land, it cannot be presumed that more than 20 per centum of its stockholders are aliens. The presumption with such a corporation. is that a sufficient percentage of its shareholders are citizens. It was not necessary to allege or prove that they are. If the statute has any application in proceedings of this nature, the alienage of the shareholders is a matter of defense.

The plaintiff, to some extent, relies upon an act of congress of July 24, 1866, found in R. S. (U. S.) §§ 5263–5268, inclusive, while defendant's counsel insist—First, that the plaintiff is not a telegraph company within the meaning of that act; and, second, if it be such a company, that the act does not authorize it to enter upon the right of way of a railway company without the consent of such company. Section 5263 of the act provides:

"Any telegraph company now organized, or which may hereafter be organized, under the laws of any state, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads."

And in section 5268 it is enacted that

"Before any telegraph company shall exercise any of the powers or privileges conferred by law such company shall file their written acceptance with the postmaster general of the restrictions and obligations required by law."

In these days there ought to be no one to question the statement that a telephone is simply an improved telegraph. The former was originally called the speaking telegraph. The instruments used at the terminals are different, but the poles, the wires, the insulators, and the generation of the electric current are all the same. The slight technical difference was exceedingly well stated by one of the witnesses, at the hearing, in the following language:

"In sending telegraph messages, the sender writes out into words what he wishes to transmit; another party takes it, and translates it into sounds that represent letters, which are sent over the wire by breaking the electric current which reproduces the sounds at the other end, which are retranslated by the operator at the end into words, and delivered to the customer; and in sending the message by telephone the person who desires to send a message speaks into the instrument, and, instead of breaking and interrupting the current, it is partially broken and varied by the air waves produced by speaking, and the spoken words or air waves pass over the wire by their effect on the electric current,—that is, they are reproduced into sound waves, and give out the same sound at the other end as was spoken into the instrument at the transmitting end."

The rule is well established that in applying the principles of the common law or in construing statutes the telephone is to be considered a telegraph, unless express statutory provisions govern the case. So the courts have almost universally held that telephone companies are engaged in public business, have the same public duty of serving the community, and may, when establishing their lines, exercise the right of eminent domain under the constitution and the laws. See the cases cited 25 Am. & Eng. Enc. 745, and notes. Also Cumberland Telephone & Telegraph Co. v. United Electric Ry. Co., 42 Fed. 273; Chesapeake v. Baltimore, 66 Md. 399, 7 Atl. 809; Hudson River v. Watervliet, 135 N. Y. 393, 32 N. E. 148. No valid distinction can be made between federal and state legislation on the subject. So that the act of congress in reference to telegraph lines over and along post roads, before referred to, must, in our opinion, include telephone lines where applicable at all.

Unquestionably, a line constructed, as is proposed by plaintiff, for public use, for the transmission of intelligence by wire, whether it be, technically speaking, a telegraph or a telephone line, is a work of internal improvement. Rippe v. Becker, 56 Minn. 100, 57 N. W. 331; Cater v. N. W. Tel. Exch. Co., 60 Minn. 539, 63 N. W. 111. Therefore its corporate owners may obtain its right of way by condemnation proceedings, as provided in G. S. 1894, § 2604. It seems clear from the construction placed on the act of congress of 1866, before mentioned, and in part quoted, that it is of no service to plaintiff in these proceedings, either when standing alone or

when taken in conjunction with the state law, for in Pensacola Tel. Co. v. Western U. Tel. Co., 96 U. S. 1, it was held, construing the act, that

"It gives no foreign corporation the right to enter upon private property, without the consent of the owner, and erect the necessary structures for its business; but it does provide that, whenever the consent of the owner is obtained, no state legislation shall prevent the occupation of post roads for telegraph purposes by such corporations as are willing to avail themselves of its privileges;" and that:

"No question arises as to the authority of congress to provide for the appropriation of private property to the uses of the telegraph, for no such attempt has been made.   *   *   *   If private property is required, it must, so far as the present legislation is concerned, be obtained by private arrangement with its owner. No compulsory proceedings are authorized."

This federal statute does not give a telegraph company the right to occupy the right of way of a railroad with its line unless the road consents, or a contract has been made with a prior owner, which is binding upon such road. Western U. Tel. Co. v. Ann Arbor R. Co., 33 C. C. A. 113, 90 Fed. 379. It has no application in proceedings against an unwilling party, as is this defendant.

It is strongly urged by counsel for defendant that, even admitting that plaintiff corporation has been given the power of eminent domain under the state laws, it is not authorized to appropriate any part of defendant's right of way to its use. The general rule is that

"Express legislative authority is generally requisite. except where the proposed appropriation would not destroy or greatly injure the franchise, or render it difficult to prosecute the object of the franchise, when a general grant would be sufficient. Land already devoted to another public use cannot be taken under general laws, where the effect would be to extinguish a franchise. If, however, the taking would not materially injure the prior holder, the condemnation may be sustained." Mills, Em. Dom. §§ 45, 47; New York v. Metropolitan, 63 N. Y. 326; Suburban v. Mayor, 128 N. Y. 510, 28 N. E. 525; Morris v. Central, 31 N. J. L. 205; Winona v. City, 4 S. D. 323, 56 N. W. 1077.

And that the rule has been repeatedly recognized in this jurisdiction is quite evident. Milwaukee & St. P. Ry. Co. v. City of

Faribault, 23 Minn. 167; St. Paul U. D. Co. v. City of St. Paul, 30 Minn. 359, 15 N. W. 684; St. Paul, M. &. M. Ry. Co. v. City of Minneapolis, 35 Minn. 141, 27 N. W. 500; Minneapolis Western Ry. Co. v. Minneapolis & St. L. Ry. Co., 61 Minn. 502, 63 N. W. 1035.

In the case at bar plaintiff's right to obtain an easement for its lines over and across defendant's way where it has been broadened to either 200 or 300 feet in width depends upon the statute of the state, which is general in its terms. No express authority can be found therein for such a procedure, and therefore it must arise, if at all, from necessary implication. The right of plaintiff must be subservient to the extent indicated in the rules hereinbefore stated. The use which plaintiff proposes to make of the strip it seeks to condemn must not be inconsistent with the paramount right which defendant acquired long ago, nor can it be such as will materially interfere with, essentially injure, or tend to defeat the public use to which the property has already been devoted. There must also be some necessity for the appropriation, not a necessity created by the corporation asserting the right, that it may be convenienced, or a necessity arising out of a desire unreasonably to economize. So, in cases where the power is not expressly granted by statute, but is to be implied therefrom, the conditions surrounding any particular case must disclose a practical necessity for the exercise of eminent domain over property already devoted to a public use. There must exist in a given case this necessity in order reasonably to effectuate the purposes for which the petitioning corporation was created, and hence to raise the presumption that such power was within the contemplation of the legislature which enacted the general law.

So, in the present instance, the inquiry is, have we a case on the evidence of practical necessity? Is it reasonably necessary that plaintiff should cross these lands in order that it shall properly transact its business, and reasonably serve the public? And in determining this we must bear in mind the rights of the prior holder, and its duty to the public. Let us therefore examine the conditions.

Defendant is a railway company, owning and operating its line of road in the usual manner and under ordinary rules. It is both

master and servant, with duties to perform towards the public, as well as obligations in behalf of the people in its employ. While it may not be true that at all times it should have absolute and exclusive dominion over every portion of its right of way,—and it would be impossible,—it must not be forgotten that public policy requires that no other use or occupation inconsistent with the efficient management of its tracks and trains can be tolerated. The inconvenience and the danger of having the poles and wires of plaintiff's lines on defendant's right of way, as well as men and teams while building and thereafter keeping in repair, with right of ingress and egress for all time, are not to be forgotten as among the surrounding conditions, and when considering the question of practical necessity.

Let us now consider plaintiff's case on the question of the reasonableness of its demands. As a rule, the railway line runs east and west, plaintiff's proposed line paralleling it on the south. If it is not permitted to bisect defendant's right of way, but is compelled to keep outside thereof, its easement must, at places, turn at right angles, and run north or south for from 50 to 100 feet. With its poles set within its six-foot strip, so that the wires would have to be strung directly over this strip, following it without deviation, there would be, of necessity, four right angles at each broadened tract of defendant's right of way. This would not only prove a very expensive part of the work, but would necessitate the putting in of guy posts out in the fields, or on defendant's right of way, and the use of guying wires at each corner, in order to keep the corner poles upright. And from the evidence it appears that with the greatest care and most substantial and best known methods of guying corner poles, they are apt to yield to the great strain upon them, and fall, carrying with them many in the vicinity. This is especially true when storms prevail. So, if it were necessary to place the wires to be strung by plaintiff directly over its easement, and thus make a great number of right angles, there might be a sufficient reason for saying that a practical and reasonable necessity existed for condemning the easement through the broadened portions of defendant's right of way. But there is no absolute necessity for so stringing the wires. By placing poles at points

midway between the north and south ends of these north and south strips of easement, and then stretching the wire directly across to the poles easterly and westerly thereof, right angles would easily be avoided. And the right to string the wire overhead in this way could be easily secured in condemnation proceedings from the private landowners on the one side and from defendant company on the other. The result would almost do away with the objection made to right angles on telephone lines, before mentioned.

To illustrate, let us take one angle at the east end of a tract of defendant's right of way, where it is widened out from 100 to 200 feet. Place a pole at a point midway between the north and south ends of the north and south strip six feet wide. We find, by calculation, that the next pole to the east would be set $137\frac{3}{4}$ feet east of the south end of said strip, while the next pole west would be set the same number of feet west of the north end. A line of wire running from the east to the west pole, connecting with the pole in the center, would be stretched at an angle of less than 11 degrees. If the defendant's right of way is 300 feet wide, and a pole is set midway between the north and south ends of the north and south strip, the first pole on the east would be $130\frac{3}{4}$ feet east of the south end, and the first pole on the west the same distance from the north end. Here the wire would angle less than 21 degrees. The objection to right angles would be almost entirely removed if this method were adopted, and no practical necessity would remain for placing poles or wires on defendant's right of way except at the corners where the line would deflect.

We have stated that the six-foot strips with which plaintiff proposes to bisect defendant's right of way where it is more than one hundred feet wide vary from one-fourth of a mile to one and one-fourth miles in length, aggregating eight miles in Murray county. To be more definite, there are in this county ten separate tracts of widened right of way, which plaintiff proposes to cross, instead of deflecting to the north or south for the purpose of going around. Six of these are at least one mile long, so that, if the detours are required, there would be, approximately, a mile of straight line paralleling each, between the deflections at each end. Nor would the deflections from the line where defendant's right of way is of

ordinary width be very marked or noticeable, even where the way is widened to 300 feet. As before shown, the greatest angle will be less than 21 degrees if the plan of stringing wires herein suggested be followed. We venture to assert that in this state there are many telegraph lines following the curves of railway tracks, where the angles are much more pronounced than would be those in question. It is perhaps well to say, in this connection, that a case might arise where it would clearly appear from the evidence that a railway company had widened its right of way at places designedly, that it might compel other corporations organized for a public purpose, to avoid paralleling its line. Such a scheme could not be allowed to succeed, but we have nothing of the kind now before us.

The matter of expense has also been mentioned. If the six-foot strip was followed, and right angles made at each corner for the eight miles in Martin county, there would be less than 1,300 feet additional; and, of course, this added distance would be much reduced if the plan suggested by us is adopted. While we must admit that appropriating property, either by direct legislation or by the exercise of eminent domain, is not, generally speaking, an exhaustion of the right as to that particular property, the reasonable and practical necessity of a second appropriation must be considered whenever the question is presented.

The claims set forth in behalf of plaintiff in support of the judgment appealed from may thus be summed up. That its line of telephone, built in a straight line, will be stronger and better built than if built at right angles, and that it will not be so liable to break by the accumulation of snow and sleet, the expansion and contraction of the wires by heat and cold, and by the storms and blizzards to which they are exposed, as it will be if built at right angles; and also that it will be more expensive to build at right angles than it will if built as desired, requiring larger poles, set deeper in the earth, and at shorter distances from each other, and properly braced or guyed. These claims could be urged with equal potency by other companies desiring to enter into the same line of business, and also to obtain a like right upon defendant's property. So that in time a multitude of poles and a network of wires

might cover defendant's right of way, although there would be no reasonable or practical necessity therefor, seriously interfering with its business, and impairing its efficiency as a servant of the public.

The judgments are reversed, and the causes remanded for further proceedings.